SIDNEY E. COLLINS, APPELLANT, *v.* DRURY THOMPSON, WILLIAM F. CLEVELAND, AND JAMES CAMPBELL'S WIDOW, HEIRS, AND DEVISEES.

Where the complainant set up in his bill that a deed, power of attorney, and other writings, all which, as alleged, were executed in contemplation of a suit for the recovery of his patrimonial inheritance of which he had been unjustly deprived, were obtained by imposition and fraud, and also that a deed, executed by him in the adjustment of the estate among the parties participating in the litigation to recover it, was obtained by like fraud and imposition, held, that upon the pleadings and proofs, the allegations are not sustained; on the contrary, the transactions in both respects referred to were fair, open, and unexceptionable.

THIS was an appeal from the Circuit Court of the United States for the southern district of Alabama.

It was a bill filed by Collins, to set aside certain agreements, upon the ground that he had been imposed upon and deceived by Thompson and the other defendants in error.

The facts are all stated in the opinion of the court.

The Circuit Court dismissed the bill, and Collins appealed to this court.

It was argued by *Mr. Sewall* for the appellant, and by *Mr. Smith* and *Mr. Benjamin* for the appellees.

The arguments of the counsel upon both sides were almost exclusively directed to the evidence, and how far it sustained the charges of fraud brought by Collins against Thompson and the other appellees.   To apply these arguments, it would be necessary to give at least an abstract of the evidence, which would throw no light upon any general questions of law or equity.   They are therefore passed over.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the United States for the southern district of Alabama.

The bill was filed by Collins, to set aside certain convey-ances of a tract of land situate in the city of Mobile, and particularly a deed from him to the defendants, bearing date the 15th February, 1851, on the ground of fraud and imposi-tion in the procurement of said conveyances.

The pleadings and proofs are very voluminous, the plead-ings alone covering nearly one hundred, and including the proofs, exceeding five hundred, closely printed octavo pages. The bill is very inartificially drawn, being stuffed with minute and tedious detail of what might have been proper evidence of facts constituting the ground of the complaint, instead of a concise and orderly statement of the facts themselves.   This has led to an equally minute and extended statement of the grounds of the defence in the several answers of the defend-ants.

In looking closely, however, into the case, and into the nature and grounds of the relief sought, and principles upon which it must be sustained, if at all, it will be found that the questions really involved, as well as the material facts upon which their determination depend, are few and simple, and call for no very extended discussion.

The father of Collins, the complainant, died in 1811, seized of an interest in the tract of land in dispute.   He left three sons, the complainant being then some two years old.   The tract subsequently passed into the possession of one Joshua Kennedy, by collusion between Inerarity, the administrator of Collins the elder, and Kennedy, the latter also afterwards

obtaining a deed of the land from the heirs at law by fraudulent representations.

In 1844, Thompson, one of the defendants in the present suit, residing in the city of Mobile, and having some knowledge of the original title of Collins to the land, and of the means by which the heirs had been deprived of it, visited the complainant, then residing in Texas, and being the only surviving heir, with a view to purchase his title, or to obtain an arrangement with him in respect to it, so that a suit might be instituted for the recovery of the estate. An arrangement was agreed to accordingly, and a conveyance of the land executed by the complainant and his wife to Thompson; also, a power of attorney, authorizing him to institute suits for the recovery of the land—Thompson, at the same time, executing a bond of indemnity to the complainant against all costs and responsibilities, in consequence of the suit. The complainant was to receive $10,000, in the event of a recovery. A suit was subsequently instituted in the name of the complainant against the heirs of Kennedy, in April, 1844, in the Circuit Court of the United States for the southern district of Alabama; was heard upon the pleadings and proofs at the April term of the court, in 1847, and a decree rendered in his favor; which, on an appeal to this court, was affirmed at the December term, 1850. The case, as reported in this court, will be found in the 10th How., p. 174.

The litigation extended over a period of some seven years; and, in the progress of it, besides Thompson, who had made the original arrangement with the complainant, three other persons had become interested, and had contributed their services and money in bringing it to a successful termination.

After the affirmance of the decree in this court, and confirmation of the title in complainant, all the parties concerned met in the city of Mobile, at the office of the solicitors, for the adjustment of their respective claims to the property recovered. Its value had increased, during the progress of the suit, from about $100,000, according to the estimate, to some two or three times that amount. The complainant had originally stipulated for the sum of $10,000. In this adjustment, one-

third of the whole estate was set apart to him, and one-sixth to each of the other four persons. Conveyances according to this division were executed on the 15th February, 1851. The complainant therefore, according to the general estimate, received $100,000, and the other four associates $50,000 each.

Now, the fraud alleged in the bill, and which is mainly relied on for setting aside this adjustment and division of the estate between the parties, is placed upon two grounds: 1. In obtaining the deed of the land, powers of attorney, and other stipulations relating to the title, dated the 13th January, 1844, preparatory to the institution of the suit in which the property was recovered; and 2. In the adjustment and division of the property among the several parties above mentioned, after the recovery had taken place, and which was consummated by the deed of 15th February, 1851.

1. It is insisted, on behalf of the complainant, that, at the time he executed the deed, powers of attorney, and the other writings, in 1844, he was unacquainted with the value of the property or the condition of the title; that Thompson, who procured these instruments, and the authority to commence the suit, was well acquainted with both; that he fraudulently depreciated the value of the property, and exaggerated the difficulties and expense attending the litigation, and thereby deceived the complainant. This is the substance of the charge.

There is, however, a very brief but most conclusive answer to it, upon the pleadings and proofs in the case. It is, that Mr. Justice CAMPBELL, whose firm had been subsequently employed by Thompson to bring the suit against the heirs of Kennedy, declined the retainer, and refused to have anything to do with it, unless the complainant should not only be made sole plaintiff in the suit, but should have a substantial interest in the estate sought to be recovered; should attend as the party in interest in conducting the proceedings, and take part in the preparation for trial; and insisted that the preliminary arrangement made by Thompson, including the deed of the property and agreement for the payment of the $10,000, should be abrogated and given up. All of which was agreed to by Thompson and the other parties concerned; and the

suit was commenced and carried on to a final determination, under this new arrangement. The complainant attended, and participated in the preparation of the case, assisted in procuring and in the examination of the witnesses, and admits, in his bill, that he attended every term of the court at Mobile, while the cause was pending, and until the decree in his favor.

The whole arrangement, therefore, between the parties, in respect to the property, entered into with a view to the institution of the suit, which is complained of, having been given up, and a new one substituted, which was not only unexceptionable, but highly equitable and just, as concerned the complainant, the charge of fraud and imposition depending upon it, even if originally it had any foundation, falls with it. We shall not stop to inquire into the merits or justice of that arrangement, for, having been given up, they are wholly immaterial in any view of the case, as presented upon the evidence before us.

2. The remaining ground of fraud relied on in the bill is, that on the day of the arrival of the complainant at the city of Mobile, from his residence in Texas, and which was his first visit to the city after the judgment in his favor in this court, he was requested to attend at the office of the solicitors, in the evening, and attended accordingly, where he met the defendants, and was then, for the first time, informed that they had been interested in the prosecution of the suit, and had expended much time and money in the litigation, and were therefore expected to participate in the division of the property recovered. That complainant was taken by surprise when the suggestion was made at the meeting, by the solicitor, that, in the division, one-sixth part of the estate should be given to each of the defendants, and including Primrose, and only one-third to himself. That he was unprepared to act with judgment in the matter, having been wholly unadvised of the object of the meeting, or of the persons who were to be present; that no time was given him for reflection or counsel; that he was ignorant of the value of the property, and incapable of acting understandingly upon the subject, and had no information as to the amount he was thus suddenly called on to give away.

That a deed was immediately prepared by the solicitor, tc carry into effect the division as suggested, and was executed: and that this meeting was arranged by preconcert, and after consultation between the defendants and others, for the purpose of entrapping and deceiving the complainant. The deed referred to is that of 15th February, 1851, which is sought to be set aside.

This is the second ground of fraud substantially as charged in the bill; and it will be necessary to look into the answers and proofs in the case, with a view to see if it is sustained.

The answer of Thompson, which is responsive to this particular charge, is a denial of every material fact and circumstance upon which the allegation of fraud rests. It states, that one or two days after the arrival of the complainant at Mobile, he requested him (the respondent) to go with him to the office of the solicitor that evening; that he had made an appointment with the solicitor to meet the respondent, and other persons interested in the suit, there, in order to come to an understanding and adjustment of their respective interests. The matters of the adjustment formed the subject of their conversation during the afternoon, and down to the time of the meeting. That the respondent explained to him the understanding he had with his associates, the other defendants, the services they had rendered in the suit, and the advances of money made therein; that, after all the parties had assembled at the office, the subject was again talked over at length, and, in the course of the conversation, the solicitor was referred to, and desired to suggest what, in his judgment, would be a reasonable adjustment and division of the property. Whereupon, he suggested a division into six parts—two parts to the complainant, and one to Thompson and each of his three associates; that this appeared to be generally acquiesced in, and it was proposed by some one that the papers should be drawn and executed. But the solicitor objected, and advised them to postpone the execution, and reflect upon the matter, and when they had come to determination among themselves, it would be time enough to make out the papers; that the complainant expressed great pleasure and satisfaction at the divis-

ion; other of the parties were not satisfied. But, in a few days, all met at the office of Primrose, one of the parties in interest, when the deed of the 15th of February, 1851, was voluntarily executed, carrying into effect the division.

The answer of Cleveland, another of the defendants, is equally explicit. He states that the subject of the division was talked over at the office of the solicitor; that all expressed satisfaction at the division suggested, except Primrose, who objected to the allowance of two shares to the complainant, he insisting that the time and labor of others had chiefly contributed to the success of the suit, and that complainant had originally expressed a willingness to be content with a small sum; that the solicitor repelled the idea, and said, that although others had been chiefly instrumental in carrying the case through, the title was in the complainant, and he ought to have the largest share; that the solicitor advised the parties to consider the matter, and, if he could aid them, to call on him; that the deed carrying into effect the division was not executed till several days, and respondent thinks a week, after this, at the office of Primrose.

James Campbell, another of the defendants, states that, after the meeting at the office, the subject of the interests of the parties was talked over; that upon the division suggested by the solicitor all concurred, except Primrose, who represented his claims higher than those of complainant; that he had rendered greater services, and was entitled to a greater share. He depreciated complainant's title to the estate, insisting that he alone could have made nothing out of it, and had always said he would be satisfied with some negroes and cattle; that the solicitor replied to him, that without complainant's title there could have been no recovery; and that, whatever others had done, still the title was in the complainant, and that he, the solicitor, had undertaken the suit with the distinct understanding and agreement that complainant was to have a substantial interest in the recovery. The respondent denies that the deed was drawn or executed the evening of the meeting, nor until several days afterwards.

These several answers are directly responsive to the charges

in the bill, and are to be taken as true, unless overcome by the proofs. Instead of impeaching, the proofs are all in support of them.

Primrose, a witness on the part of the complainant, and who was one of the parties in interest, and present at this meeting, confirms the facts as above stated. In his answer to 43d interrogatory, he says, in substance, that, after conversation at the meeting relating to the subject before them, all seemed willing to leave the division to the solicitor, who thereupon suggested one-third to the complainant, and one-sixth to each of the others; that he (the witness) objected, as giving too great a share to the complainant, and that he made some remarks about the condition of the title, when he and the others undertook the suit; that complainant at that time had said he would be satisfied with a comparatively small sum, and that the solicitor replied to him, that the title to the property was in the complainant, besides making other observations which he (the witness) did not recollect.

This witness further says, in answer to the 43d cross interrogatory, speaking of the division, "All but myself did acquiesce. So far as I could judge, the complainant was satisfied, and I was disappointed.' "Judge Campbell maintained Collins's right to two shares against me. The parties talked some of the matters over freely and considerably. It consumed a winter's evening, or greater part of it." "I do know Collins was pleased, and considered the settlement fair, just, and lib eral towards him."

Judge Campbell, the solicitor, has also been a witness in the case. He states that, after some reference to the subject at the meeting, and interchange of views, one of the parties stated that he was willing to abide by his opinion as to the share he should be entitled to, and others indicated a wish that he would make some suggestions as to the proper adjustment. In answer to which, he suggested a division of the property into six parts, and that two should be assigned to the complainant; that Primrose expressed dissatisfaction, insisting the part to be assigned the complainant was too large; that his title was good for nothing, and that the success in the

suit was owing to the ability with which it was prosecuted, that complainant did not expect so large a share; that he had said all he wanted was a few negroes and some cattle.

The witness further states, that he took pains to answer these objections; and, after some further conversation, the parties left his office; that he told them when they left to take into consideration what had been said, and that if he could be of any service to them, to call at his office again; that no agreement was arrived at that evening, and no papers drawn up of any agreement between the parties; that the deed of February, 1851, was not prepared by him till several days after this, and that he had not learned of its execution till the week after its preparation.

It is useless to pursue the inquiry further, as the proofs in the case are all one way, and show that there is no foundation whatever, not even colorable, for the charge of fraud set forth in the bill.

Besides the entire want of proof to sustain it, the evidence shows that possession of the property was taken by the parties jointly, after the settlement, in the summer of 1851. Extensive and valuable improvements were made in the course of the years 1852–'53, under the direction of the complainant and others. The sales in 1853 had amounted to $92,000, as stated in the bill.

The property continued under the joint management of the parties for the period of some three years, without complaint or dissatisfaction on the part of Collins; when suddenly, without any apparent reason or changed condition of affairs between him and his associates, he seems to have taken up the delusion that he had been circumvented, and deceived into an inequitable settlement of the estate among the parties, in February, 1851, and for the first time set up a claim to the whole of it.

It is suggested in the bill, that the large sales made of the property in 1852–'53 afforded the complainant the first evidence of the great value of the estate; and it appears, from other portions of the case, that the increased and increasing value of the property had the effect to unsettle the views and

opinions upon which he had acted in the settlement with his associates in February, 1851, and led to a strong desire to recall and review them.

But this suggested ignorance of the great value of the property at the time of the settlement is against all the proof in the case. His bill, filed against the heirs of Kennedy in April, 1844, for the recovery of this property, contains the following allegation: "Your orator charges that the said property was worth $20,000 and upwards in 1820, $75,000 in 1830, and is probably worth $200,000 at this time."

The great value of the property, compared with the consideration paid by Kennedy, was a very material fact in the case. Besides, the complainant had spent much of the time pending that litigation in the city of Mobile, in which the property was situate, and must have been familiar with its value, present and prospective. He was then in the prime of life, and possessed of more than ordinary intelligence in business matters, as is apparent from his correspondence, to be found in the record.

Having succeeded in the recovery, and obtained possession of the estate, he seems to have forgotten the obligations he was under to his associates. Their exertions and means had been mainly instrumental in raising him from poverty to affluence. They had advised him of his claim or title to the property, collected the necessary evidence to establish it, employed the counsel, and even furnished him (Collins) with the means of support, and to enable him to co-operate in the prosecution of the suit pending the litigation. The suit was severely contested, and was of some seven years' duration.

Still stronger evidence that, after his success, he was ready to forget his obligations to those mainly contributing to it, is the fact that his solicitor has not even escaped his insinuations of bad faith in his connection with the suit, though it was disclaimed on the argument by his counsel; thus contradicting all his opinions and feelings, strongly and repeatedly expressed pending the suit, and long after its termination and the settlement between the parties. The solicitor had no interest in the property or in its distribution. His fee was not

dependent upon it. He was, therefore, wholly disinterested in the matter, and well situated to act as the friend of all parties in the settlement.

As we have already stated, before the commencement of the suit, he refused to be connected with it, unless the complainant should be permitted to have a substantial interest in the estate, and repudiated the arrangement by which he was to receive only $10,000. After the recovery, and in the settlement among the parties, he stood firmly by this original understanding, and insisted that he should have a double share. So far as appears from the evidence, it is entirely owing to the sense of justice and firmness of Judge Campbell (the solicitor) that the complainant is now in the possession and enjoyment of some $100,000 of his patrimonial inheritance, instead of the $10,000 for which he himself had stipulated.

The decree of the court below is affirmed.