THE PONCE LIGHTER COMPANY, RESPONDENT, *v.* THE MUNICIPÁLITY OF PONCE ET AL., APPELLANTS.

APPEAL from the District Court of Ponce.

No. 764.—Originally decided May 24, 1912.

Decision on motion to reconsider June 20, 1913.

LICENSE TAXES—POWER OF MUNICIPALITIES TO IMPOSE TAXES—CONSTITUTIONAL LAW—INTERSTATE COMMERCE.—The plaintiff in this case is the owner of several lighters in the port of Ponce used in loading and discharging steamers

coming from the United States and foreign ports. In accordance with the Act to establish a system of local government of March 8, 1906, the municipality of Ponce approved an ordinance to regulate the imposition and collection of commercial and industrial licenses. Among other things said ordinance imposed a maximum license tax of $10 on maritime lighters after classifying them into three grades. It was held:

1. That even supposing that the plaintiff company's lighters were vessels which might engage in interstate commerce and were used only to unload vessels plying between the United States and Porto Rico, said lighters would not be exempt from the taxation levied upon them by the municipality of Ponce.

2. That section 12 of the Foraker Act authorizes the Insular and municipal governments to impose a license tax on industry or business of whatever nature.

3. That the tax imposed by the municipality of Ponce on the plaintiff company is neither unconstitutional nor a burden on interstate commerce.

4. That every vessel has a situs for the purposes of taxation and this is generally the home port of the owner.

## ON MOTION TO RECONSIDER.

RECONSIDERATION OF JUDGMENT.—The plaintiff asks for a reconsideration of the judgment rendered herein on the ground, among others, that the tax levied by the municipality of Ponce is a tax on the lighterage business which, in this case, has the character of interstate commerce, the plaintiff company having already paid the property tax on the value of the lighters. It was held:

1. That the lighters of the plaintiff company cannot be regarded as vessels engaged in interstate commerce because, although they are employed in discharging steamers coming from the United States and foreign ports, the voyage may be said to be terminated when said steamers anchor in the port of Ponce and the lighters of the plaintiff company begin to render service after the voyage has been completed.

2. It is the duty of courts to respect the will of the legislative power as expressed in its acts and a statute should never be declared null and void for unconstitutionality unless it is proven to be contrary to the Constitution beyond all reasonable doubt, and any doubt in this regard should be settled in favor of the validity of the law.

3. The mere fact that a company is engaged in interstate commerce does not imply that it is not subject to a license tax to carry on said business, provided the law or ordinance which imposes said tax is uniform and establishes no prejudicial discriminations.

4. The fact that the license tax was imposed on the plaintiff company by the classification of its lighters into three grades according to their tonnage does not transform said tax into a tonnage tax nor invalidate the ordinance.

5. The Act of July 14, 1906, for the regulation and government of the docks and harbors of .Porto Rico did not repeal the provisions of the Local Government Act of 1906 authorizing municipalities to impose license taxes on industries and businesses.

6. There is nothing in the Foraker Act prohibiting the Insular Government and municipalities of Porto Rico from imposing license taxes on industries and businesses.

7. The court is convinced, after examining the complaint, that the lighters in question are not devoted exclusively to interstate commerce.

The facts are stated in the opinion.

*Mr. Nemesio R. Canales* for appellants.

*Mr. José A. Poventud* for respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

This case was begun by complaint in the municipal court of Ponce. The defendants demurred, and, upon the demurrer being overruled, filed an answer virtually admitting all the facts of the complaint. The municipal court sustained the complaint, and the district court substantially followed the same course. The facts of the complaint are substantially as follows:

That the plaintiff corporation is and has been from a date prior to January 1, 1909, a corporation created with respect to the laws of Porto Rico and is the owner of and possesses in the Port of Ponce 23 lighters, with which the said corporation, always in the said port, in accordance with the articles of incorporation, devotes itself and has devoted itself to the business of unloading merchandise, effects and other freight brought to the Port of Ponce by steamers and boats coming from foreign ports and from the ports of the United States. and devoting itself also to loading the same with merchandise, effects and other things which go out from such port for foreign ports and other points and ports of the United States, this business being absolutely indispensable in order that such steamers and vessels occupied in the commerce and transportation of freight between the United States, foreign nations and Porto Rico, may unload the said merchandise and effects in Porto Rico and also to transport them from such port to the said outside ports, such state of affairs being due to the fact that the bay and port of the city of Ponce is exceedingly shallow, so that all the said boats and vessels have to anchor about half a mile from the land.

That in the port (*playa*) of the town of Ponce there does not exist and has not existed any wharf, pier or other landing place or construction belonging to the defendant corporation which the complainant uses or can use in the said business of lighterage, the said complainant exercising the said business exclusively in the Port of Ponce, which is the property and under the absolute maritime jurisdiction of the Government of the United States.

That the municipality of Ponce is a municipal corporation created by the laws of Porto Rico, with power to sue and be sued, the other two defendants being the treasurer and municipal inspector (*investigador*) of the same, charged with the duty of collecting patents and licenses of industry and commerce imposed by the said municipality of Ponce.

That the complainant has and has had from a time before January 1, 1909, in addition, a contract with the foreign corporation, The New York & Porto Rico Steamship Co., to unload its boats in such Port of Ponce from such steamships making voyages with freight and passengers between the Ports of New York City, New Orleans, San Juan and Ponce.

That the complainant pays and has always paid insular and municipal taxes to the Treasurer of Porto Rico on the value of its said boats or lighters, in accordance with the laws of this Island in regard to this matter, of which taxes the municipality of Ponce receives and has always received its proportional share.

That by virtue of a law to regulate the service of wharves and ports of Porto Rico approved by the Insular Legislature on July 14, 1906, such complainant has and has always had its said lighters registered in the office of the captain of the Port of Ponce, paying also the annual fees which that law requires to obtain as the complainant has always obtained the necessary license of the captain of the port in order to be able to devote itself to the said business of lighterage.

That the complainant was obliged to obtain, as it has obtained, another license in order to transport merchandise

with its lighters at the Port of Ponce, such license being issued by the collector of customs of San Juan, P. R., conditioned upon a bond of $4,000 which the complainant had to execute to carry on said business with respect to the customs' regulations of the United States of 1899. Then follows a copy of the license.

That the municipality of Ponce for the fiscal year of 1910 to 1911 and in June of 1910 approved an ordinance for the imposition and collection of taxes for licenses of industry and commerce, namely, for the carrier's fees, for licenses and the exercising of said business. The part of the ordinance which refers to the business of the complainant being as follows:

"Ordinance for the imposition and recovery of taxes for licenses of industry and commerce, for the fiscal year of 1910–11.

"WHEREAS, according to the provisions of the law of the Legislative Assembly of Porto Rico entitled 'An Act to establish a system of local government,' approved on March 8, 1906, municipal councils have power to obtain an income from the collection of any commercial or industrial licences imposed in accordance with the provisions of said law;

"WHEREAS, the Municipal Council of Ponce needs to obtain a part of its expenses and of its budget for the fiscal year of 1910–11 by tariffs for licenses of industry and commerce;

"WHEREAS, all the municipal licenses for use in 1910–11 and all the taxes which have to be imposed by the municipality to be recovered during such exercise, are to be obtained in accordance with the terms of the law aforesaid and the amendment of section 74 of the same, approved on March 14, 1907;

"THEREFORE, be it ordered by the Municipal Council of Ponce: First section. That during the fiscal year which commences on July 1, 1910, and ends on June 30, 1911, and in the following years, so long as the council makes no other provision, there shall be imposed and recovered, in order to provide for the necessities of the municipality, taxes for licenses of industry and commerce subject to the following: Tariff for licenses of industry and commerce. Eighth Group, Miscellaneous, Maritime Launches. First class, more than 30 tons, $10; second class, up to 30 tons, $8; third class, up to 10 tons, $4."

That by another ordinance of the same municipality, approved in the same month and year as the former, to regulate the recovery of licenses and other municipal taxes, and for other purposes, it was provided that the payment of such licenses shall be indispensable and that those who desire to enter into such business should present a petition to the municipal treasurer specifying the nature and class of the same. It was also provided by the same ordinance that a person who entered into such business without such licenses should be fined from $2 to $50 according to the taxes due. Then follow some provisions setting out more specifically the nature of the ordinance. Then the complaint goes on to state that the complainant paid the taxes amounting to $190 for the year 1911 and a similar sum for the year ending in 1910. The complaint furthermore states that such imposition of taxes is against the following provisions of the Constitution of the United States: Fourteenth Amendment, article 1, section 8, paragraph 3; article 4, section 3, paragraph 2; article 1, section 10, paragraph 3; and as being contrary to the following Federal laws: Sections 34, 13, 9, 14 and 38 of the Foraker Law; the law of Congress of March 3, 1899; sections 4385 and 1891 of the Revised Statutes of the United States; and the Customs' Regulations of 1899, sections 1079, 1104, 1105 and 1107. The complainant maintains that under this prohibition of the Constitution and the Federal laws, it is exempt from such taxations or license fees and entitled to the return of the same.

The court below properly decided that the State might recover taxes and the municipality impose taxes for carrying on a business, and that the taxation by the municipality would not be invalid, and cited authorities, but the court upheld the complaint on other grounds.

The principal contention of the complainant and respondent is that the collection of these taxes by the municipality of Ponce is an undue burden on interstate commerce, and therefore unconstitutional and void. The court cites numerous

authorities to this effect. *Sinnot* v. *Davenport,* 22 How.,
227; *Foster* v. *Davenport,* 22 How., 246; *The Daniel Ball,*
10 Wall., 557; *Moran* v. *New Orleans,* 112 U. S., 69; *Gloucester
Ferry Co.* v. *Pennsylvania,* 114 U. S., 196; *Robbins* v. *Shelby
County,* 120 U. S., 489; *Leloup* v. *Port of Mobile,* 127 U. S.,
640; *Lyng* v. *Michigan,* 135 U. S., 161; *Crutcher* v. *Ken-
tucky,* 141 U. S., 47; *Ficklin v. Shelby Co.,* 145 U. S., 1;
*Brennan* v. *Titusville,* 153 U. S., 297; *Telegraph Co.* v. *Adams,*
155 U. S., 695; *Osborne* v. *Florida,* 164 U. S., 652. The
leading case in this subject is *Leloup* v. *Port of Mobile,*
127 U. S., 640.

On page 648 of that report the court says:

"In our opinion such a construction of the Constitution leads to
the conclusion that no State has the right to lay a tax on interstate
commerce in any form, whether by way of duties laid on the trans-
portation of the subjects of that commerce, or on the receipts derived
from that transportation, or on the occupation or business of carry-
ing it on, and the reason is that such taxation is a burden on that
commerce, and amounts to a regulation of it, which belongs solely to
Congress. This is the result of so many recent cases that citation is
hardly necessary."

But the court goes on to say:

"We may here repeat, what we have so often said before, that this
exemption of interstate and foreign commerce from State regulation
does not prevent the State from taxing the property of those engaged
in such commerce located within the State as the property of other
citizens is taxed, nor from regulating matters of local concern which
may incidentally affect commerce, such as wharfage, pilotage, and the
like. We have recently had before us the question of taxing the prop-
erty of a telegraph company, in the case of *Western Union Telegraph
Co.* v. *Massachusetts,* 125 U. S., 530."

Supposing for the moment that these lighters of the com-
plainant are vessels or instruments of commerce belonging to
the class of vessels which might engage in interstate com-

merce, it is evident from the complaint that such lighters are not solely restricted to commerce between the United States and Porto Rico, but they are also used for the unloading of boats from foreign ports. It could not be said, following the admissions of the complaint, that this company is dedicated solely to commerce between the United States and Porto Rico; but even if these lighters were vessels under a company incorporated in Porto Rico and sailing solely between the Port of Ponce and the Port of New York, the authorities are clear that they would still be subject to local taxation. Some of the cases cited by the district judge are distinguished in *Old Dominion Steamship Co.* v. *Virginia,* 198 U. S., 308, where the same court lays down this distinction, that boats or vessels temporarily in a port may not be taxed by the government of the jurisdiction, but they may be taxed in their home ports where they have their situs. When they have their situs in a particular State, the opinion points out, they become incorporated with the other personal property of the State. The principle of non-taxation and its exceptions is further emphasized by the case of *Atchison, Topeka and Santa Fe Railway Co.* v. *Sowers,* 213 U. S., 55. The Supreme Court again, in the case of *Southern Pacific Co.* v. *Kentucky,* 222 U. S., 63, brings forth the fact that any vessel has a taxable situs, and recently in the case of *Samuel D. Gromer* v. *The Standard Dredging Co.,* 224 U. S., 362, in both the majority and dissenting opinions the court holds and makes clear that every vessel has a taxable situs. Moreover, these lighters of the complainant were subject to some jurisdiction and taxation. They were not within the exclusive jurisdiction of the United States. The fact that they were in the Port of Ponce and not attached to any wharf or pier does not exempt them from taxation. *Gromer* v. *Standard Dredging Co., supra.*

The respondent also maintains that the tax upon these lighters is void and unconstitutional because it is a tonnage tax. Strictly speaking, the tax imposed is not a tonnage tax,

because the tax is not proportioned to the actual tonnage of the lighters, but divides the lighters into three classes according to their actual size or tonnage. In the State tonnage-tax cases, 12 Wall., 204 *et seq.,* the Supreme Court of the United States decided that taxes at so much per ton of the registered tons were against a prohibition of the Constitution, and that the case is not varied by the fact that the vessels were not only owned by citizens of the United States, but exclusively engaged in trade between places within the States. The idea, however, of this prohibition against tonnage tax is to prevent the States from taxing vessels for the mere privilege of entering a port or ports of the respective States. The idea of the prohibition was to put no restriction upon the free intercourse of vessels between port and port. In the *Transportation Co.* v. *Parkersburg,* 107 U. S., 698, the court distinguishes between what is and what is not a duty of tonnage and defines it as a duty on a vessel for the privilege of entering a port. That case sustained a wharfage duty depending upon the capacity of vessels per ton. Another case which shows the same distinction is *Cannon* v. *New Orleans,* 20 Wall., 577. These lighters were not vessels as the term is generally understood, nor did they voyage between port and port. They were exclusively engaged in the business of lighterage in the Port of Ponce.

We further think that section 12 of the Organic Law authorize the Insular and Municipal Governments to impose a tax for a license or business of whatever nature conducted within the recognized limits of the municipality. The municipality was an agency of The People of Porto Rico, and all kinds of business receive protection by the way of health and police and municipal regulations from the State and the municipality.

Before we would have been able to affirm the judgment in this case it would have been necessary for us to decide that commerce between New York and Porto Rico is interstate commerce within the interstate-commerce clause of the Con-

stitution of the United States. As, however, our judgment is a reversal, we do not consider it necessary to enter into a discussion of this question. The judgment must be reversed and a judgment entered in favor of the defendant.

*Reversed.*

Chief Justice Hernández and Justices MacLeary, del Toro and Aldrey concurred.

On a motion filed subsequently for a reconsideration of the judgment, a second hearing was held and on June 20, 1913, Mr. Justice Wolf delivered the following opinion of the court:

Various are the grounds and considerations presented in the rehearing of this case.

(*a*) The respondent in discussing our original opinion refers to the citation there made, namely, the concluding words of the case of *Leloup* v. *Mobile,* 127 U. S., 648, 649, and maintains in substance that the Supreme Court in that case was merely exempting property taxes from the rule established there; that in the case at bar the tax is exclusively on the business or occupation of lighterage; that such lighterage in the case of the respondent is interstate commerce; and that the respondent had paid its taxes on the value of the lighters.

A great part of the argument of the parties in this case concerned the question of the jurisdiction over these lighters, the respondent in this court, who was the complainant in the court below, maintaining in paragraph 2 of the complaint that the harbor of Ponce belonged exclusively to the admiralty jurisdiction of the United States. The respondent does not now insist upon this admiralty proposition and it has been conclusively settled by the case of *Gromer* v. *The Standard Dredging Company,* 224 U. S., 362. But in the case of *Leloup* v. *Mobile* the court also said:

"Ordinary occupations are taxed in various ways, and, in most cases, legitimately taxed. But we fail to see how a State can tax a business occupation when it cannot tax the business itself. Of course, the exaction of a license tax as a condition of doing any particular business, is a tax on the occupation; and a tax on the occupation of doing a business is surely a tax on the business." 127 U. S., 645.

We understood, and still understand, that in the case of *Leloup* v. *Mobile* the Supreme Court of the United States was disclaiming any intention of attempting to control .matters which in their essential nature were local. The respondent was maintaining that lighters in the bay of Ponce were outside of the jurisdiction of Porto Rico. Not only in paragraph 2 of its complaint did respondent rely on this question of the jurisdiction, but counsel, when in the complaint he came to cite the laws that he thought had been violated by the municipality, cited sections of the Foraker Act and sections of the Revised Statutes of the United States which necessarily related to matters of maritime jurisdiction. As further showing the principle involved in all previous citations from *Leloup* v. *Mobile,* see *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S., 23. *Brennan* v. *Titusville,* 153 U. S., 303. In respondent's brief as well as in the opinion of the lower court, on which respondent largely relied, cases were cited wherein the corporation or individual taxed or objecting to a law or a regulation was one that was not subject to the local jurisdiction or represented a corporation or individual who was not so subject.

We did not lose sight of the fact that respondent was alleging that it was engaged in interstate commerce, but the inference from the complaint was principally that such interstate commerce might not be regulated by Porto Rico because such commerce took place in waters beyond its jurisdiction. Under such circumstances, whether the tax be regarded as a property tax or an occupation tax, the reasons for declaring it void would coincide. These lighters, which it was assumed were resting on the bay of Ponce, could not then be

reached by the taxing power of Porto Rico other than by a tax on the franchise of the domestic corporation as such.

(*b*) We expressed a doubt in the original opinion as to whether these vessels were really instruments of commerce. The idea was that these presumably small boats only came into play after the interstate-commerce business was completed. The fact that in other ports the vessels or lighters are needed to complete the voyage would not be controlling here if the vessel had made its port. In Ponce and other harbors an incoming vessel anchors in the bay within the jurisdiction of Porto Rico, and the interstate voyage might be considered complete. Furthermore, we had occasion to see in the case of *Pagán, López & Co.* v. *Mayagüez Dock and Shipping Co.,* 18 P. R. R., 387, that in seven bills of lading of The New York and Porto Rico Steamship Company the company claimed the right to deliver the goods alongside the ship's tackle to the consignee at the option of the captain or to hire lighters at the expense of the owner of the goods to land them. We decided there that the consignee could exercise the same privilege. Whether this election is common to bills of lading we do not know, but if so, it shows clearly that the interstate voyage comes to an end on anchoring, as can reasonably be presumed. Perhaps the facts in that case are not directly before the court, but we think that the complainant to state a cause of action should have alleged that The New York and Porto Rico Steamship Company, by its contracts or otherwise, was bound to provide for the transportation of passengers and freight to the shore.

(*c*) In the original opinion we alluded to the fact that the lighters of the respondent were engaged not only in interstate but also in foreign commerce, and respondent draws our attention to this statement to say that foreign commerce is also under the exclusive control of Congress. What we really had in mind, and we shall discuss the point hereafter, was that these lighters could not be assumed to belong to a special commerce, but that their business was general. This

also follows in another way from the complaint. In paragraph 4 thereof the complaint says that the complainant has a contract with the foreign corporation, The New York and Porto Rico Steamship Company, making voyages with freight and passengers between the ports of New York, New Orleans, San Juan, and Ponce. Even if this were not a specific statement, this court would take judicial notice of the course of the steamship lines and that the said company performs not only an interstate, but also an intrastate business among the various ports of Porto Rico, and this intrastate business so far as it is handled at sea is handled almost exclusively by such company. The contract of The Ponce Lighter Company with The New York and Porto Rico Steamship Company, according to the same paragraph, is to unload the vessels of such company.

(*d*) Additional arguments are now presented on the reconsideration of this case which, while not changing the ultimate opinion of the court, have made it seem advisable to attempt to explain a little more fully, among other things, the nature of the constitutional question involved and to show what is really meant by a charge or a burden upon interstate commerce.

The municipality of Ponce has collected license fees from the respondent for the use of certain lighters in the port of Ponce, and the respondent having paid the fees under protest is seeking to recover them. The court below, in rendering its opinion, specifically disclaimed any intention of declaring null and void the ordinance of the municipality fixing the license fees, but apparently only decided that such municipality had no right to recover from the respondent inasmuch as the latter was engaged in interstate commerce. So that we have here apparently a judgment which declares unconstitutional an exercise of authority by a community; and hence a declaration that the ordinance is void and unconstitutional in so far as it affects the respondent, a decision which it seems to us is equivalent to saying that a State may not

exact license fees for the carrying on of business from that part of its citizenship which is engaged in interstate commerce, and that an individual or a corporation may be exempted from a burden of taxation borne by the other part of the community engaged in the same or a similar kind of business, merely because the business of such individual or corporation is interstate rather than domestic. We assume, for the moment at least, that the respondent is exclusively engaged in such an interstate business.

It is the duty of a court to follow the will of the Legislature unless the particular authority sought to be exercised is clearly against the Constitution. In his Constitutional Limitations Mr. Cooley says:

"It has been said by an eminent jurist, that when courts are called upon to pronounce the invalidity of an act of legislation, passed with all the forms and ceremonies requisite to give it the force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of the legislative action, and the act be sustained.

"The question whether a law be void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station could it be unmindful of the solemn obligation which that station imposes; but it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other. Mr. Justice *Washington* gives a reason for this rule, which has been repeatedly recognized in other cases which we have cited. After expressing the opinion that the particular question there presented, and which regarded the constitutionality of a State law, was involved in difficulty and doubt, he says: 'But if I could rest my opinion in favor of the constitutionality of

the law on which the question arises, on no other ground than this doubt so felt and acknowledged, that alone would, in my estimation, be a satisfactory vindication of it. It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the Constitution is proved beyond all reasonable doubt.'

"The constitutionality of a law, then, is to be presumed, because the legislature, which was first required to pass upon the question, acting, as they must be deemed to have acted, with integrity, and with a just desire to keep within the restrictions laid by the Constitution upon their action, have adjudged that it is so." See also *Brown* v. *Maryland,* 12 Wheaton, 419, 458.

It is with this presumption prominently in mind that we have returned to consider the validity, with respect to the respondent, of the ordinance of the municipality of Ponce.

The difficulty in recognizing where the power of a State over commerce ends and the jurisdiction of the United States begins has been recognized by the Supreme Court of the United States in practically all its cases. But, in order to get some idea out of what are the underlying principles, a reference to some of the cases would be an aid.

In the case of the *Providence Bank* v. *Billings,* 4 Peters, 514, 563, the court, through Chief Justice Marshall, held that the power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic, and that this was the original principle which had its foundation in society itself, which was granted to all for the benefit of all, and that it resided in government as part of itself, and that however absolute the right of an individual might be, it was still in the nature of that right that it must bear a portion of the public burdens, and that burden must be determined by the Legislature; that this vital power might be abused, but that the Constitution of the United States was not intended to furnish the correction of every abuse of power which might be committed by the State governments. This decision, while not strictly a case on interstate commerce,

is a convenient source from which to draw the fundamental concept in regard to the power of taxation of a sovereign body. See likewise *Bradley* v. *City of Richmond,* 227 U. S., 477.

One of the leading cases in the Supreme Court of the United States is *Woodruff* v. *Parham,* 8 Wall., 123. It was there adjudged by the court that a uniform tax imposed by ordinance of the city of Mobile, under the authority of the Legislature of Alabama on all sales by auction in that city, was constitutional, because it was a simple tax on sales of merchandise imposed alike upon all sales made in Mobile, whether the sales were made in the State of Alabama or another State, and whether the goods sold were the products of that State or of some other. There was no attempt to discriminate injuriously against the products of other States or the rights of their citizens, and the court held, therefore, that there was no attempt to fetter commerce among the States or to deprive the citizens of other States of any privilege or immunity possessed by citizens of Alabama. It is well to emphasize in regard to this point that the questions of equality and lack of discrimination are prominent features in determining whether a sovereignty has put a burden or a "fetter" upon interstate commerce. In *Hinson* v. *Lott,* 8 Wall., 153, it was adjudged by the court that a statute of a State imposing a tax of 50 cents per gallon, to be paid by the distiller on all intoxicating liquors introduced into the State for sale, was constitutional on the ground that no greater tax was laid on liquors brought into the State than on those manufactured in it, and that whereas the tax on the distiller was supposed to be the most expedient mode of securing its payment as to liquors manufactured within the State, the tax on those who sold liquors brought in from other States was only the complementary provision necessary to make the tax equal on all liquors sold in the State, and that the effect of the Act in question instituted no legislation which discriminated against the product of sister States, but merely

subjected them to the same right of taxation paid by similar articles manufactured in the State. In *Ward* v. *Maryland,* 12 Wall., 418, a statute of Maryland which required non-residents to take out a higher license than residents, was held unconstitutional because of discrimination. In *Welton* v. *Missouri,* 91 U. S., 275, a statute of Missouri was held to be unconstitutional by reason of discrimination. In *Robbins* v. *Shelby County Taxing District,* 120 U. S., 489, it was held that a statute of Tennessee requiring all "drummers and all persons not having a regular licensed house of business in the taxing district, offering for sale or selling goods, wares, or merchandise therein by sample" to pay a certain sum weekly or monthly for a license, was, as applied to persons soliciting orders for goods on behalf of a house doing business in other States, unconstitutional as inconsistent with the power of Congress to regulate commerce among the several States.

There have been numerous other cases wherein the court has declared unconstitutional acts which attempted to tax drummers who merely represented persons outside of the State; to tax express companies by license, or otherwise, who merely had an agency at a particular place; to tax telegraph companies and the like whose business was principally and necessarily outside of the State, and without any attempt to segregate its interstate from its intrastate business. In *Emmert* v. *Missouri,* 156 U. S., 296, however, the court held that a statute of a State by which peddlers of goods going from place to place within the State to sell them were required under a penalty to take out and pay for licenses and which made no discrimination between the residents or products of the State and those of other States was not, as to peddlers of goods previously sent to them by manufacturers of other States, repugnant to the grant by the Constitution to Congress of the power to regulate commerce among the several States. The court reviewed a number of cases, some of them cited above, and among them the case of *Machine Co.*

v. *Gage*, 100 U. S., 676, which it directly approved and followed. In that case the Supreme Court of Tennessee decided that the law of the State imposing an annual tax upon all peddlers of sewing machines and selling by sample levied such tax upon all without regard to the place of growth or produce of material or of manufacture, and that the law so construed was not in violation of the Constitution of the United States.

*Nathan* v. *Louisiana*, 8 How., 73, was a case where the court decided specifically that the State had a right to tax its own citizens for the prosecution of any particular business or profession within the State. The court said:

"The right of a State to tax its own citizens for the prosecution of any particular business or profession, within the State, has not been doubted. And we find that in every State money or exchange brokers, venders of merchandise of our own or foreign manufacture, retailers of ardent spirits, tavern keepers, auctioneers, those who practice the learned professions, and every description of property, not exempted by law, are taxed."

And again,

"No State can tax an export or import as such, except under the limitations of the Constitution. But before the article becomes an export, or after it ceases to be an import, by being mingled with other property in the State, it is a subject of taxation by the State. A cotton broker may be required to pay a tax upon his business, or by way of license, although he may buy and sell cotton for foreign exportation."

And the court held that a tax on the business of an exchange broker who buys and sells foreign bills of exchange was not repugnant to any power of the Federal Government.

In *Kirtland* v. *Hotchkiss*, 100 U. S., 499, there was a question of a foreign debtor, and the court said that the debt having its *situs* at the creditor's residence, both he and it were, for the purposes of taxation, within the jurisdiction of the State, and that consequently it was for the State to determine, consistently with its own fundamental law, whether

such property owned by one of its residents should contribute, by way of taxation, to maintain the Government; that its discretion in that regard could not be supervised or controlled by any department of the Federal Government, because such tax violated no provisions of. the Federal Government, citing with approval *Nathan* v. *Louisiana, supra.*

In *Transportation Company* v. *Wheeling,* 99 U. S., 273, the court held that steamboats which ply between different ports on a navigable river might, under a State statute, be taxed as personal property by the city where the company owning them had its principal office and which was their home port, although they were duly enrolled and licensed as coasting vessels under the laws of the United States, and all fees and charges thereon demandable under those laws had been duly paid. The court said:

"Decided cases of the kind everywhere deny to the States the power to tax ships as the instruments of commerce, but they all admit, expressly or impliedly, that the State may tax the owners of such personal property for their interests in the same. Corresponding views are expressed by Mr. Burroughs in his valuable treatise upon taxation. He says that vessels of all kinds are liable to taxation as property in the same manner as other personal property owned by the citizens of the State; that the prohibition only comes into play where they are not taxed in the same manner as the other property of the citizens, or where the tax is imposed upon the vessel as an instrument of commerce, without reference to the value as property."

In *Moran* v. *New Orleans,* 112 U. S., 75, the court held that, otherwise unrestrained by the authority of the Federal Constitution, the taxing power of the State extends to and embraces the persons, property, and pursuits of its people; although it was not always easy in particular cases to draw the line which separated the two jurisdictions.

The Kansas City Live Stock Exchange was an unincorporated association of men, doing business at its stock yards situated partly in Kansas City, Missouri, and partly across

the line separating Kansas City, Missouri, from Kansas City,
Kansas. The business of its members was to receive indi-
vidual consignments of cattle, hogs and other live stock from
owners of the same, not only in the States of Missouri and
Kansas, but also in other States and Territories, and to feed
such stock and to prepare it for the market, to dispose of the
same, to receive the proceeds thereof from the purchasers,
and to pay the owners their proportions of such proceeds
after deducting charges, expenses, and advances. The mem-
bers were individually in the habit of soliciting consignments
from the owners of such stock, and of making them advances
thereon. The rules of the association forbade members from
buying live stock from a commission merchant in Kansas City
not a member of the exchange. They also fixed the commis-
sion for selling such live stock, prohibited the employment
of agents to solicit consignments except upon a stipulated
salary, and forbade the sending of prepaid telegrams or tele-
phone messages, with information as to the condition of the
markets. It was also provided that no member should trans-
act business with any person violating the rules and regula-
tions, or with an expelled or suspended member after notice
of such violation, and it was held by the Supreme Court that
the situation of the yards, partly in Kansas and partly in
Missouri, was a fact without any weight; that such business
or occupation of the several members of the association was
not interstate commerce within the meaning of the Act of
July 2, 1890, c. 647, "to protect trade and commerce against
unlawful restraints and monopolies" and that that act does
not cover, and was not intended to cover, such kind of agree-
ments, and the court said:

"But in all the cases which have come to this court there is not
one which has denied the distinction between a regulation which
directly affects and embarrasses interstate trade or commerce, and
one which is nothing more than a charge for a local facility provided
for the transaction of such commerce. On the contrary, the cases

already cited show the existence of the distinction and the validity of a charge for the use of the facility." *Hopkins* v. *United States,* 171 U. S., 578, 597.

In the *American Steel & Wire Co.* v. *Speed,* 192 U. S., 500, the opinion was by Mr. Justice White, and the court held that goods brought in original packages from another State after they have arrived at their destination and are at rest within the State and are enjoying the protection which the laws of the State afford may, without violating the commerce clause of the Constitution, be taxed without discrimination like other property within the State, although at the time they are stored at the distributing point from which they are subsequently to be delivered in the same package through the storage company to purchasers in various States. The court reviews various cases and insists upon the principles of *Woodruff* v. *Parham* and *Emmert* v. *Missouri, supra.*

Another recent interstate case of interest is *Hatch* v. *Reardon,* 204 U. S., 161, where the court held that the protection of the commerce clause of the Federal Constitution is not available to defeat a State stamp-tax law on transactions wholly within a State because it affects property without that State, or because one or both of the parties previously came from other States, and the court cites the cases of *Nathan* v. *Louisiana, Woodruff* v. *Parham, Emmert* v. *Missouri,* and *American Steel and Wire Co.* v. *Speed, supra.*

In *Brown-Forman Co.* v. *Kentucky,* 217 U. S., 572, the court says:

"We come then to the question as to whether this act makes an arbitrary and illegal discrimination in favor of other persons or corporations engaged in the same business. The question is at last one of classification of subjects, trades or pursuits for the purpose of taxation, and concerns the power of the States to exercise discretion in the methods, subjects and rates of taxation. Fundamental to the very existence of the governmental power of the States as is this function of taxation, it is nevertheless subject to the beneficent

restriction that it shall not be so exercised as to deny to any the
equal protection of the law.''

In *United States Express Co.* v. *Minnesota,* 223 U. S.,
335, the court says:

''The right of the State to tax property, although it is used in
interstate commerce, is thoroughly well settled. *Postal Telegraph
Cable Co.* v. *Adams,* 155 U. S., 688; *Pullman's Palace Car Co.* v.
*Pennsylvania,* 141 U. S., 18; *Ficklen* v. *Shelby County,* 145 U. S.,
1, 22. The difficulty has been, and is, to distinguish between legiti-
mate attempts to exert the taxing power of the State and those laws
which, though in the guise of taxation, impose real burdens upon
interstate commerce as such. This difficulty was recognized in *Gal-
veston, Harrisburg and San Antonio Railway Co.* v. *Texas,* 210 U. S.
*supra,* wherein the possible differences between the decisions in *Phila-
delphia Steamship Co.* v. *Pennsylvania,* 122 U. S. *supra,* and *Maine*
v. *Grand Trunk Railway Co.,* 142 U. S. *supra,* were commented upon
and explained. Mr. Justice Holmes, speaking for the court, (p. 227),
said:

'' 'By whatever name the exaction may be called, if it amounts
to no more than the ordinary tax upon property or a just equiv-
alent therefor, ascertained by reference thereto, it is not open to
attack as inconsistent with the Constitution.' *Postal Telegraph
Cable Co.* v. *Adams,* 155 U. S., 688, 697. See *New York, Lake Erie
and Western Railroad Co.* v. *Pennsylvania,* 158 U. S., 431, 438, 439.
The question is whether this is such a tax. It appears sufficiently,
perhaps from what has been said, that we are to look for a practical
rather than a logical or philosophical distinction. The State must
be allowed to tax the property and to tax it at its actual value as
a going concern. On the other hand the State cannot tax the inter-
state business. The two necessities hardly admit of an absolute
logical reconciliation. Yet the distinction is not without sense. When
a legislature is trying simply to value property, it is less likely to
attempt to or effect injurious regulation than when it is aiming
directly at the receipts from interstate commerce. A practical line
can be drawn by taking the whole scheme of taxation into account.
That must be done by this court as best it can.''

Here perhaps is the crux of the whole situation. Judge
Holmes does not distinguish between a property or an occu-

pation tax when the sole object of the State is taxation on the citizenship without favor or discrimination.

Other cases may be cited where a tax on an occupation, interstate in its nature, has been sustained. *Ficklen* v. *Shelby County,* 145 U. S., 1; *American Harrow Co.* v. *Shaffer,* 68 Fed. Rep., 750; *State of Maryland* v. *Applegarth,* 12 L. R. A., 812, and see note to *People* v. *Wemple,* 27 Am. State Rep., 562, where the distinction between the cases is also pointed out. Another case which emphasizes the principle of a State's right of taxation is *Pennsylvania R. R. Co.* v. *Knight,* 192 U. S., 21, where the court held that a cab service maintained by the Pennsylvania Railroad Company to take passengers to and from its terminus in the city of New York, for which the charges were separate from those of other transportation and wholly for service within the State of New York, was not interstate commerce, although all persons using the cabs within the company's regulations were either going to or coming from the State of New Jersey by the company's ferry; such cab service was subject to the control of the State of New York and the railroad company was not exempt, on account of being engaged in interstate commerce, from the State privilege tax of carrying on the business of running cabs for hire between points wholly within the State.

From a review of these cases it is evident that if a State places a tax on all occupations within its borders of a certain class, a particular corporation cannot escape taxation by the averment that it is engaged in interstate commerce, unless it can show that the particular authority attacked places a peculiar or a special burden or fetter upon interstate commerce. In such cases the State has not taxed them because of their being engaged in interstate commerce, but because they are within the territory and jurisdiction of the State, and in this regard see *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S., 18. The sole fact that a domestic corporation is engaged in interstate commerce is not enough

if no discrimination is made against it. Some other incre-
ment than mere taxation is necessary. A manufacturer who
had a factory in Kansas City, Missouri, selling to Kansas,
and another factory across the line in Kansas City, Kansas,
selling to Missouri, could not escape an occupation tax in
either State on the ground of his interstate business. Some-
times from the decided cases it does not seem that the prin-
ciple of the right of taxing of domestic occupations has been
always clearly stated, but the rule is defined by the excep-
tions. The laws or authority pronounced unconstitutional
are clearly shown as exceptions.

*Norfolk, etc., Railroad Co.* v. *Pennsylvania,* 136 U. S., 114,
cited by respondent, was a case where a tax was imposed upon
a foreign railroad company, a link in a chain of railroads, for
the privilege of maintaining an office in the State of Penn-
sylvania. The act was aimed at foreign corporations.

*The Daniel Ball,* 10 Wall., 557, was a case where a vessel
was required to take out a license before she could travel
in navigable waters of the United States. There was no ques-
tion of a tax on the vessel or the property or the occupation
as is the case here. The case is distinguished in *Pennsyl-
vania Railroad Co.* v. *Knight,* 192 U. S., *supra,* p. 27.

In *Moran* v. *New Orleans,* 112 U. S., 74, which we have
cited *supra,* again the tax was for the privilege of navigating
waters of the United States, namely, the Mississippi, and the
act prevented the owner from navigating unless he paid the
tax.

In *Gloucester Ferry Company* v. *Pennsylvania,* 114 U. S.,
196, the New Jersey corporation had no business nor prop-
erty in Pennsylvania other than the ferriage of freight and
passengers to a wharf in Gloucester, New Jersey. In all
these cases cited by respondent the tax or the regulation was
on the vessel or the interstate business as such. There was
no purpose to subject a local concern to the ordinary burden
of taxation.

It is true that in *Foster et al* v. *Davenport,* 63 U. S., 244,

the lightering or towing was held to be but the prolongation of the voyage of the vessels assisted to their port of destination. But there again the law of Alabama required the owners of steamboats navigating the waters of the State, before such boats should leave the port of Mobile, to file a statement in writing setting out the name of the vessel, the name of its owner and other similar requirements, and fixing a penalty for violation, and the Supreme Court of the United States decided that the act was in conflict with an Act of Congress so far as the State law was brought to bear upon a vessel which had taken out a license and was fully enrolled under the Act of Congress for carrying on the coasting trade. The regulation was not one designed for local boats, but required every vessel entering the port to register. The particular vessel, moreover, was needed to complete the voyage of another vessel into the Mobile harbor. All the boats were vessels in the coastwise trade, duly licensed and enrolled. The case has no application to a tax in the business of lighterage carried on within the jurisdiction of Porto Rico, where no discrimination is made. There was no question of taxation involved and the statute of Alabama violated a particular law of Congress. The case is further distinguished by the principle of the Knight case, *supra*.

Respondent places further reliance on the case of *Leloup v. Mobile*, 127 U. S., 640, *supra*, to show that even if lighters are engaged in local commerce as well as interstate commerce, they are still exempt from local taxation as for a business. The Western Union Telegraph Company was the real person interested and the court decided that the State of Alabama could not require Leloup, the agent of the telegraph company, to take out a license as a prerequisite to doing business. The case falls under the rule or the exception, as the case may be, as pointed out or distinguished by Mr. Justice White in the case of the *American Steel and Wire Company v. Speed,* 122 U. S., 500, and again by the same court in *Bacon v. Illinois*, 227 U. S., 504. The Western Union Tele-

graph Company, moreover, was a corporation incorporated under the laws of the State of New York. There is not a suggestion in that case or any other that we have seen that would exempt a corporation purely local from bearing its distributive share of taxation along with others engaged in the same business.

(e) Respondent maintains that with respect to the question of a tonnage duty the cases cited by this court in its original opinion support its contention that no tax per ton may be imposed for the purpose of entering, trafficking, or remaining in a harbor. It is plain from the decisions already cited, and others, that the fundamental idea is a tax imposed by one sovereignty on the boats of another for doing business within its ports or harbors. It is conceded that taxes on wharfage may be imposed by the ton and not constitute a tonnage tax. In the same way a State may regulate a business and require it to support the commonwealth and determine the right of taxation by the ton or any other convenient measure. If it may tax foreign vessels for wharfage by the ton, surely it may likewise, for the protection it affords its citizens and corporations domiciled within its borders, impose a tax on such citizenship. We may allude more specifically to what was said in *Transportation Co.* v. *Parkersburg,* 107 U. S., 698. "The fact that the rates are charged or graduated by size or tonnage of the vessel is of no consequence in this connection." This is a tax on business or property within the borders of Porto Rico and not a tonnage duty, for to be a tonnage duty it must be imposed for the port privilege. Moreover, these taxes are not measured by the ton. The Legislature of Porto Rico gave the municipality the right to charge as high as $10 for each and every lighter, but the municipality was also given power to divide the lighters into three classes. The tax might have been imposed by size, and the fact that such lighters were taxed accordingly, as they were, above a certain tonnage, the tax not to exceed $10, is not a tax per ton. The tax was not lev-

ied against foreign vessels and was not one measured proportionately to weight or measure. The following cases are also applicable: *Inman Steamship Co.* v. *Tinker,* 94 U. S., 243; *Packet Company* v. *Keokuk,* 95 U. S., 80; Words and Phrases, vol. 8, p. 6998; 7 Cyc., 643; *Machine Co.* v. *Gage,* 100 U. S., 677; *Packet Company* v. *Catlettsburg,* 105 U. S., 559.

(*f*) In our original opinion we referred to the fact that before we could reverse this case we should have to decide whether this commerce is really interstate commerce or not. The doubt was whether Porto Rico, being a sovereignty or quasi-sovereignty created by the United States and with powers directly derived from the United States, was distinct from the United States within the spirit of the interstate-commerce clause, but as this case is decided on other points and as Porto Rico might be considered as a State for the purpose of the interstate-commerce clause, we think no further discussion of the question is necessary.

(*g*) We do not think that the law passed in the Extraordinary Session of July 14, 1906, (Laws of 1907, pp. 64 and 66), a law for the regulation and government of the docks and harbors of Porto Rico, repealed the provisions of the Law of March, 1906, authorizing municipalities to tax lighters. This was a tax imposed by the Island on lighters. No intention is revealed in the act to abrogate the power of the municipality to fix an occupation tax on its citizens. Repeals by implication are not favored.

(*h*) Respondent draws our attention to the fact that no direct draft of power to tax occupations is given by the Foraker Act. But there is no real limitation. Section 38 says that taxes and assessments on property may be levied, and forbids certain other taxation, but the limitation on the power of taxation is not to be lightly inferred when Congress in various sections has given Porto Rico governmental and legislative powers. Moreover, the power to tax occupations existed in the municipalities before the advent of the Fora-

ker Act, was perpetuated by the military orders and by the Foraker Act itself when it provided for the continuance of the laws and orders in force.

(i) To resume. The act of March, 1906, gave the municipalities the right to levy taxes on specific occupations or lighters, as the case may be. It was not a tonnage tax for the various reasons we have discussed, but only a fixing of the three grades mentioned by the said act. The municipality could have imposed a uniform tax of $10 on every kind of lighter, and as the greater includes the less there was no attempt to tax as per ton. The tax as designed by the Legislature was on all lighters within the ports or bays of Porto Rico and such tax was not to exceed $10 per lighter. There was no discrimination by the Legislature as to lighters of any kind, class, or degree, nor was it unequal or unjust that the Legislature should have delegated the power to divide the taxation in three grades.

The tax, whether it be regarded as a specific tax on the lighters or on the occupation of carrying on the lighterage business, operated uniformly throughout the Island and over ports and bays subject to the control of The People of Porto Rico and the respective municipalities, and on lighters in Porto Rico doing all sorts of business. They not only unload foreign boats or boats devoted to interstate commerce, but they are also used in domestic commerce. In the bay of San Juan, for example, lighters are used indiscriminately to carry passengers or freight from shore to vessels, and they are also used to carry freight from shore to shore. Fruits, salt and other products are so lightered. Even if the respondent company is considered to be exclusively devoted to interstate commerce, it could not expect to escape its due share of the burden of taxation, which falls indiscriminately upon all lighters in the ports and bays of Porto Rico. However, as we have seen and as shown by paragraph 4 of the complaint, The Ponce Lighter Company cannot be considered to be devoted exclusively to interstate commerce. The vessels of the New York

and Porto Rico Steamship Company come to rest in the vari-
ous bays of Porto Rico, and hence no further completion of
the voyage is necessary, but in any event we have seen no
case nor any rule of equity or fair-play which would lead us
to believe that the tax in this case is in any way a burden
on interstate commerce. In its essential nature it is a tax
either upon property of citizens in Porto Rico or on one of
their callings; and as we have seen, both property and busi-
ness is subject to taxation at the instance of the Legislature.

The judgment must be reversed.

*Reconsideration denied.*

Chief Justice Hernández and Justices MacLeary, del Toro
and Aldrey concurred.