## LELOUP *v.* PORT OF MOBILE.

ERROR TO THE SUPREME COURT OF THE STATE OF ALABAMA.

No. 274. Submitted May 2, 1888. — Decided May 14, 1888.

Where a telegraph company is doing the business of transmitting messages between different States, and has accepted and is acting under the telegraph law passed by Congress July 24th, 1866, no State within which it sees fit to establish an office can impose upon it a license tax, or require it to take out a license for the transaction of such business.

Telegraphic communications are commerce, as well as in the nature of postal service, and if carried on between different States, they are interstate commerce, and within the power of regulation conferred upon Congress, free from the control of state regulations, except such as are strictly of a police character; and any state regulations by way of tax on the occupation or business, or requiring a license to transact such business, are unconstitutional and void.

A general license tax on a telegraph company affects its entire business, interstate as well as domestic or internal, and is unconstitutional.

The property of a telegraph company, situated within a State, may be taxed by the State as all other property is taxed; but its business of an interstate character cannot be thus taxed.

The Western Union Telegraph Company established an office in the city of Mobile, Alabama, and was required to pay a license tax under a city ordinance, which imposed an annual license tax of $225 on all telegraph companies, and the agent of the company was fined for the non-payment of this tax: in an action to recover the fine, he pleaded the charter and nature of occupation of the company, and its acceptance of the act of Congress of July 24th, 1866, and the fact that its business consisted in transmitting messages to all parts of the United States, as well as in Alabama: *Held*, a good defence.

THE case is stated in the opinion.

*Mr. Gaylord B. Clark* for plaintiff in error submitted on his brief.

No appearance for defendant in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was an action brought in the Mobile Circuit Court, in the State of Alabama, by the Port of Mobile, a municipal corporation, against Edward Leloup, agent of the Western Union Telegraph Company, to recover a penalty imposed upon him for the violation of an ordinance of said corporation, adopted in pursuance of the powers given to it by the legislature of Alabama, and in force in August, 1883. The ordinance was as follows, to wit: "Be it ordained by the Mobile Police Board, that the license tax for the year, from the 15th of March, 1883, to the 15th of March, 1884, be, and the same is hereby, fixed as follows: . . .

"On telegraph companies, $225. . . .

"Be it further ordained: For each and every violation of the aforesaid ordinance the person convicted thereof shall be fined by the recorder not less than one nor more than fifty dollars."

The complaint averred that the defendant, being the managing agent of the Western Union Telegraph Company, a cor-

poration having its place of business in the said port of Mobile,
and then and there engaged in the business and occupation of
transmitting telegrams from and to points within the State
of Alabama and between the private individuals of the State of
Alabama, as well as between citizens of said State and citizens
of other States, committed a breach of said ordinance by neg-
lecting and refusing to pay said license to the said municipal
corporation. The complainant further averred that for this
breach the recorder of the port of Mobile imposed on the de-
fendant a fine of five dollars, for which sum the suit was
brought.

The defendant pleaded that at the time of the alleged
breach of said ordinance, he was the duly appointed manager,
at the port of Mobile, of the Western Union Telegraph Com-
pany. That said company "was prior to the fifth day of
June, 1867, a telegraph company duly incorporated and
organized under the laws of the State of New York, and
by its charter authorized to construct, maintain, and operate
lines of telegraph in and between the various States of
the Union, including the State of Alabama. That on said
fifth day of June, 1867, the said telegraph company duly filed
its written acceptance with the Postmaster General of the
United States of the restrictions and obligations of an act of
Congress entitled 'An act to aid in the construction of tele-
graph lines and to secure to the government the use of the
same for postal, military, and other purposes,' approved July
24th, 1866. That in accordance with the authority of its said
charter and the said act of Congress, and by agreement with
the railroad companies, the said telegraph company constructed
its lines and was at the time of the said alleged breach of said
ordinance, maintaining and operating said lines of telegraph on
the various public railroads leading into or through the said
port of Mobile, to wit, the Mobile and Ohio Railroad, a rail-
road extending from the said port of Mobile, in Alabama,
through the States of Mississippi, Tennessee, and Kentucky,
to Cairo, in the State of Illinois; the Louisville and Nashville
Railroad, extending from Cincinnati, in the State of Ohio,
through said port of Mobile to New Orleans, in the State of

Louisiana, with a branch extending from said State of Ala-
bama over the Pensacola and Louisville Railroad to Pensacola,
in the State of Florida. That the said telegraph lines so run-
ning into or through said port of Mobile connected with and
extended beyond the termini of the said railroads over other
railroads, making continuous lines of telegraph from the office
of said company, in said port of Mobile, to, through, and over
all of the principal railroads, post roads, and military roads in
and of the United States, and having offices for the transac-
tion of telegraph business in the departments at Washington,
in the District of Columbia, and in all of the principal cities,
towns, and villages in each of the United States and in the Ter-
ritories thereof. That all of said railroads so leading into and
through the said port of Mobile and elsewhere in the United
States are public highways, and that the daily mails of the
United States are regularly carried thereon, under authority
of law and the direction of the Postmaster General, and that
said railroads and each of them are post roads of the United
States. That said telegraph lines are also constructed under
and across the navigable streams of the United States, in the
State of Alabama and in the other States of the Union, but in
all cases said lines are so constructed and maintained as not
to obstruct the navigation of such streams and the ordinary
travel on such military and post roads. That the said tele-
graph company was, before and during said year, commencing
March 15th, 1883, and now is, engaged in the business of send-
ing and receiving telegrams over said lines for the public
between its said office in the port of Mobile and other places
in other States and Territories of the United States, and to
and from foreign countries; also in sending telegraphic com-
munications between the several departments of the Govern-
ment of the United States and their officers and agents, giving
priority to said official telegraphic communications over all
other business. And defendant avers that said official tele-
grams have been and are sent at rates which have been fixed
by the Postmaster General annually since the said 5th of
June, 1867. And defendant avers that as the manager of said
company and in its name and under its direction and appoint-

ment and in no other manner or capacity was he engaged in said telegraph business at the time and the manner as alleged in said complaint."

To this plea a demurrer was filed and sustained by the court and judgment was given for the plaintiff; and, on appeal to the Supreme Court of Alabama, this judgment was affirmed. The present writ of error is brought to review the judgment of the Supreme Court. That court adopted its opinion given on a previous occasion between the same parties, in which the Circuit Court had decided in favor of the defendant, and its decision was reversed. In that opinion the Supreme Court said : " The defence was that the ordinance is an attempt to regulate commerce and violative of the clause of the Constitution of the United States which confers on Congress the ' power to regulate commerce with foreign nations and among the several States.' The Circuit Court held the defence good and gave judgment against the port of Mobile. Is the ordinance a violation of the Constitution of the United States ? We will not gainsay that this license tax was imposed as a revenue measure — as a means of taxing the business, and thus compelling it to aid in supporting the city government. That no revenue for state or municipal purposes can be derived from the agencies or instrumentalities of commerce, no one will contend. The question generally mooted is, how shall this end be attained ? In the light of the many adjudications on the subject, the ablest jurists will admit that the line which separates the power from its abuse is sometimes very difficult to trace. No possible good could come of any attempt to collate, explain, and harmonize them. We will not attempt it. We confess ourselves unable to draw a distinction between this case and the principle involved in *Osborne* v. *Mobile*, 16 Wall. 479. In that case the license levy was upheld, and we think it should be in this. *Joseph* v. *Randolph*, 71 Ala. 499."

In approaching the question thus presented, it is proper to note that the license tax in question is purely a tax on the privilege of doing the business in which the telegraph company was engaged. By the laws of Alabama in force at the time this tax was imposed, the telegraph company was re--

quired, in addition, to pay taxes to the State, county, and port of Mobile, on its poles, wires, fixtures, and other property, at the same rate and to the same extent as other corporations and individuals were required to do. Besides the tax on tangible property, they were also required to pay a tax of three-quarters of one per cent on their gross receipts within the State.

The question is squarely presented to us, therefore, whether a State, as a condition of doing business within its jurisdiction, may exact a license tax from a telegraph company, a large part of whose business is the transmission of messages from one State to another and between the United States and foreign countries, and which is invested with the powers and privileges conferred by the act of Congress passed July 24th, 1866, and other acts incorporated in Title LXV of the Revised Statutes? Can a State prohibit such a company from doing such a business within its jurisdiction, unless it will pay a tax and procure a license for the privilege? If it can, it can exclude such companies, and prohibit the transaction of such business altogether. We are not prepared to say that this can be done.

Ordinary occupations are taxed in various ways, and, in most cases, legitimately taxed. But we fail to see how a State can tax a business occupation when it cannot tax the business itself. Of course, the exaction of a license tax as a condition of doing any particular business, is a tax on the occupation; and a tax on the occupation of doing a business is surely a tax on the business.

Now, we have decided that communication by telegraph is commerce, as well as in the nature of postal service, and if carried on between different States, it is commerce among the several States, and directly within the power of regulation conferred upon Congress, and free from the control of state regulations, except such as are strictly of a police character. In the case of *The Pensacola Telegraph Company* v. *The Western Union Telegraph Company*, 96 U. S. 1, we held that it was not only the right, but the duty of Congress to take care that intercourse among the States and the transmission of intelli-

gence between them be not obstructed or unnecessarily incumbered by state legislation; and that the act of Congress passed July 24th, 1866, above referred to, so far as it declares that the erection of telegraph lines shall, as against state interference, be free to all who accept its terms and conditions, and that a telegraph company of one State shall not, after accepting them, be excluded by another State from prosecuting its business within her jurisdiction, is a legitimate regulation of commercial intercourse among the States, and is also appropriate legislation to execute the powers of Congress over the postal service. In *Western Union Telegraph Company* v. *Texas*, 105 U. S. 460, we decided that a State cannot lay a tax on the interstate business of a telegraph company, as it is interstate commerce, and that if the company accepts the provisions of the act of 1866, it becomes an agent of the United States, so far as the business of the government is concerned; and state laws are unconstitutional which impose a tax on messages sent in the service of the government, or sent by any persons from one State to another. In the present case, it is true, the tax is not laid upon individual messages, but it is laid on the occupation, or the business of sending such messages.

It comes plainly within the principle of the decisions lately made by this court in *Robbins* v. *The Taxing District of Shelby County*, 120 U. S. 489, and *Philadelphia and Southern Steamship Co.* v. *Pennsylvania*, 122 U. S. 326.

It is parallel with the case of *Brown* v. *Maryland*, 12 Wheat. 419. That was a tax on an occupation, and this court held that it was equivalent to a tax on the business carried on, — (the importation of goods from foreign countries), — and even equivalent to a tax on the imports themselves, and therefore contrary to the clause of the Constitution which prohibits the States from laying any duty on imports. The Maryland act which was under consideration in that case declared that " all importers of foreign articles or commodities, etc., and all other persons selling the same by wholesale, etc., shall, before they are authorized to sell, take out a license, . . . for which they shall pay fifty dollars," etc., subject to a penalty for neglect or refusal. Chief Justice Taney, referring to the

case of *Brown* v. *Maryland* in *Almy* v. *State of California*, 24 How. 169, 173, in which it was decided that a state stamp tax on bills of lading was void, said: "We think this case cannot be distinguished from that of *Brown* v. *Maryland*. That case was decided in 1827, and the decision has always been regarded and followed as the true construction of the clause of the Constitution now in question. . . . The opinion of the court, delivered by Chief Justice Marshall, shows that it [the case] was carefully and fully considered by the court. And the court decided that this state law [the Maryland law under consideration in *Brown* v. *Maryland*], was a tax on imports, and the mode of imposing it, by giving it the form of a tax on the occupation of the importer, merely varied the form in which the tax was imposed, without varying the substance."

But it is urged that a portion of the telegraph company's business is internal to the State of Alabama, and therefore taxable by the State. But that fact does not remove the difficulty. The tax affects the whole business without discrimination. There are sufficient modes in which the internal business, if not already taxed in some other way, may be subjected to taxation, without the imposition of a tax which covers the entire operations of the company.

The state court relies upon the case of *Osborne* v. *Mobile*, 16 Wall. 479, which brought up for consideration an ordinance of the city, requiring every express company, or railroad company doing business in that city, and having a business extending beyond the limits of the State, to pay an annual license of $500; if the business was confined within the limits of the State, the license fee was only $100; if confined within the city, it was $50; subject in each case to a penalty for neglect or refusal to pay the charge. This court held that the ordinance was not unconstitutional. This was in December term, 1872. In view of the course of decisions which have been made since that time, it is very certain that such an ordinance would now be regarded as repugnant to the power conferred upon Congress to regulate commerce among the several States.

A great number and variety of cases involving the commercial power of Congress have been brought to the attention of this court during the past fifteen years which have frequently made it necessary to reëxamine the whole subject with care; and the result has sometimes been that in order to give full and fair effect to the different clauses of the Constitution, the court has felt constrained to recur to the fundamental principles stated and illustrated with so much clearness and force by Chief Justice Marshall and other members of the court in former times, and to modify in some degree certain dicta and decisions that have occasionally been made in the intervening period. This is always done, however, with great caution, and an anxious desire to place the final conclusion reached upon the fairest and most just construction of the Constitution in all its parts.

In our opinion such a construction of the Constitution leads to the conclusion that no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress. This is the result of so many recent cases that citation is hardly necessary. As a matter of convenient reference we give the following list: *Case of State Freight Tax*, 15 Wall. 232; *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.*, 96 U. S. 1; *Mobile* v. *Kimball*, 102 U. S. 691; *Western Union Telegraph Co.* v. *Texas*, 105 U. S. 460; *Moran* v. *New Orleans*, 112 U. S. ?9; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Brown* v. *Houston*, 114 U. S. 622; *Walling* v. *Michigan*, 116 U. S. 446; *Picard* v. *Pullman Southern Car Co.*, 117 U. S. 34; *Wabash Railway Co.* v. *Illinois*, 118 U. S. 557; *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; *Philadelphia & Southern Steamship Co.* v. *Pennsylvania*, 122 U. S. 326; *Western Union Telegraph Co.* v. *Pendleton*, 112 U. S. 347; *Ratterman* v. *Western Union Telegraph Co.*, *ante*, 411.

We may here repeat, what we have so often said before,

that this exemption of interstate and foreign commerce, from state regulation does not prevent the State from taxing the property of those engaged in such commerce located within the State as the property of other citizens is taxed, nor from regulating matters of local concern which may incidentally affect commerce, such as wharfage, pilotage, and the like. We have recently had before us the question of taxing the property of a telegraph company, in the case of *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530.

The result of the conclusion which we have reached is, that the judgment of the Supreme Court of Alabama must be

> *Reversed, and the cause remanded with instructions to reverse the judgment of the Mobile Circuit Court; and it is so ordered.*