[State, ex rel. Troy v. Smith, Auditor.]

# State, *ex rel.* Troy *v.* Smith, Auditor.

## *Mandamus.*

(Decided May 19, 1914.   Rehearing denied July 2, 1914.
65 South. 942.)

1. *States; Governor; Attorney; General Apropriation.*—The general appropriation law, Acts 1911, p. 146, when construed in connection with the provisions of section 71, Constitution 1901, cannot be held to have appropriated money for the payment of contract compensation for services rendered by an attorney to the Governor.

2. *Mandamus; Proceedings; Evidence.*—Construing sections 2222 and 2241, it is held that the words "such legal proceedings" in sections 2241, referred to the proceedings specified in section 2222. which were to be had at the request and under the direction of the Tax Commissioner; hence, in an application for mandamus by an attorney employed by the Governor to compel the issuance of a warrant for his services under the appropriation made by section 2222, he was bound to show in order to recover that the services were such as those referred to in section 2241.

3. *Statutes; Amendment; Code Provision.*—The title of Acts 1911, p. 369, amending section 561, Code 1907, was not sufficient to sustain an amendment authorizing the Governor to employ an attorney to advise him in his official capacity or to institute an action in which the state was interested, and to agree with such attorney on his compensation, such amendment not being germain to the subject of the original section.

4. *Same; Code Section; Title.*—The subject matter of an amendment must be germain to the subject matter of the original section of the Code, notwithstanding the rule that a section of the Code may be amended by reference to the section number only.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Mandamus by the state on the relation of Daniel W. Troy against C. B. Smith, as State Auditor.   From a judgment denying the writ relator appeals.   Affirmed.

DANIEL W. TROY, E. S. WATTS, and R. B. EVINS, for appellant.   The act amending § 561 was constitutional and valid, as a reference in title to section number only is entirely permissible.—*Mont. v. State,* 107 Ala. 372;

*Dunbar v. Frazer,* 78 Ala. 538; *Ensley v. Cohn,* 149 Ala. 361; *Comer v. Age Herald P. Co.,* 151 Ala. 613; *Stone v. State,* 137 Ala. 1; 92 N. Y. 191; 45 Fed. 828; 191 U. S. 601; 10 Colo. 297; 28 Mo. 427; 109 Ill. 593; 14 Pac. 782; 36 Cyc. 1030. The title may be as broad as the Legislature choose to make it.—*Patton v. State,* 160 Ala. 111; *Miller v. B'ham,* 158 Ala. 59. The authorities holding that the subject-matter of an amending act must be germain to the title of the original act apply only to original acts having a title and not to Code sections mentioned by number.—*Ex parte Reynolds,* 87 Ala. 138; *Grant v. L. & N.,* 153 Ala. 112. Independent of whether the act was valid or not, the claim was valid, and it was the duty of the auditor to draw his warrant since the Governor had ample authority to employ relator.—§ 120, Constitution; §§ 552, 2241, 2243, 2240, 2222, Code 1907; *Wolf v. State,* 79 Ala. 201; *Livingston v. Pippin,* 31 Ala. 55; 12 S. C. 280; 72 Mich. 106; 8 N. Y. Ad. 177; 39 Hun. 242; 25 La. Ann. 161; 56 Ga. 478; 7 Wall. 700; 10 Wall. 483; 28 Miss. 706; 164 Mass. 241; 42 Ark. 233; 51 Wis. 623; 55 Wis. 271. On rehearing counsel insist that the case of *Griffin v. Drennen,* 40 South. 1016, is of controlling importance and must govern in this case unless overruled.

R. C. BRICKELL, Attorney General and W. L. MARTIN, Assistant Attorney General, for appellee. The Acts of 1911, p. 369, attempting to amend § 516, Code 1907, are violative of § 45, of the Constitution of 1901.—*Harper v. State,* 109 Ala. 28; *Ex parte Cowert,* 92 Ala. 94; *Ex parte Reynolds,* 87 Ala. 138; *State v. So. Ry.,* 115 Ala. 250; *Mobile v. L. & N.,* 124 Ala. 132; *Gibson v. Pearson,* 160 Ala. 131; *L. & N. v. Grant,* 161 Ala. 112; *Black v. State,* 144 Ala. 92; *State, ex rel. B'ham v. Miller,* 158 Ala. 59; *Patton v. State,* 160 Ala. 111. There is no con-

flict between these cases and that of *Griffin v. Drennen*, 40 South. 1016. The contention that the claim is valid although the act be invalid cannot be supported by the general appropriation bill, Acts 1911, 146, when construed in connection with § 71, Constitution 1901. There is no clear legal right to demand the performance of the duty required of the auditor.—*Minchener v. Carroll*, 135 Ala. 409.

GARDNER, J.—By this proceeding appellant seeks by mandamus to have appellee, as state auditor, issue to him his warrant for the sum of $125, alleged to be due by virtue of his employment as attorney on contract with the Governor.

The vouchers presented to the state auditor were approved by the Governor; the latter noting therein that the same was approved "under section 561, Code of Alabama 1907, as amended April 11, 1911, and under section 2440, Code of Alabama." The constitutionality of the act of April 11, 1911, amendatory of section 561 of the Code, is herein attacked.

It is first insisted in brief of appellant that, without regard to the said act of April 11, 1911, he was entitled to compensation, and that therefore the warrant should issue. In support of this contention we are referred to sections 2440, 2443, and 552 of the Code, and section 120 of our Constitution, to demonstrate the right of the Governor to employ relator, and reference is also made to the case of *Texas v. White*, 7 Wall. 700, 19 L. Ed. 227, and to 14 Am. & Eng. Ency. Law, 1100, and other authorities, for the same purpose. With this insistence, however, we are not here concerned, unless it also appears that there has been provided an *appropriation* for the payment of this claim.

Section 72 of our Constitution provides that no money shall be paid out of the treasury except upon appropria-

tion made by law and on warrant drawn by the proper officer. Nor is the state auditor authorized to draw his warrant for the payment of any money out of the treasury, except when directed by law.—Code, § 599; *Chisholm v. McGehee,* 41 Ala. 192. Recognizing this as the rule, appellant urges, however, that by this contract with the Governor there is created an obligation of the state, and that appropriation is made therefor under provision of the general appropriation law (Acts 1911, p. 146), wherein is found the following sentence:

"For the payment of all obligations of the state, not herein specially enumerated, such annual sum as may be necessary is hereby appropriated."

Section 71 of the Constitution reads as follows:

"The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for the public schools. The salary of no officer or employee shall be increased in such bill, nor shall any appropriation be made therein for any officer or employee unless his employment and the amount of his salary have already been provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject."

We think it clear, therefore, without further comment, that the general appropriation law, read in the light of this constitutional provision, did not provide for the payment of such claims as that for which the issuance of warrant is here sought.

Nor are we of the opinion that relator has brought himself under the influence of section 2241 of the Code. This section is found in the law creating and defining the powers and duties of the state tax commission, and must be read in connection with the other sections of

said law.   The use of the words "such legal proceedings," in said section, clearly indicates a reference to those of the preceding section, which were to be had at the request or under the direction of said tax commission.   By section 2222 of the Code the *entire appropriation* for the commission, together with every item of expense allowed therefor, is limited to $25,000 in any one year.

"It is practically a universal rule, in order to entitle a party to the writ of mandamus, he must show that he has a clear 'legal right to demand the performance of a specific duty."—*Minchener v. Carroll Treas'r,* 135 Ala. 409, 33 South. 168.

In any event, therefore, if appellant is sought to be justified under section 2241 of the Code, in view of the limitations of section 2222, it was incumbent upon him to show no violation of the provision of the latter section, and thus to show a clear, legal right.   No such attempt is made in the petition.

We are therefore brought to a consideration of the act of April 11, 1911, amendatory of section 561 of the Code, which, as seems to be conceded, if a valid enactment, entitles appellant to the relief he seeks.

Section 561 of the Code, as it stood at the time of the amendment, provided that "the governor may employ one stenographer or messenger to the chief executive office," and fixed the compensation therefor.   For convenience we here copy the section, as follows:

"The Governor may employ one stenographer or messenger to the chief executive office, whose compensation is nine hundred dollars per annum, payable monthly, on the auditor's warrant, drawn upon the Governor's certificate."—Code 1907, vol. 1, p. 392.

By the act of April 11, 1911 (Acts 1911, p. 369), this section is amended, which said amendment we also set out in full, as follows:

"Section 1.   That section five hundred and sixty-one (561) of the Code of Alabama be amended so as to read as follows:   561.   (1964).   May employ file clerk and stenographer, messenger for executive office, and counsel.—The governor may employ a file clerk and stenographer to the chief executive office at a salary of fifteen hundred dollars per annum; a messenger to the chief executive office whenever and for such period as he may deem necessary, to be paid a salary for the time of his employment at the rate of nine hundred dollars per annum; and, whenever in his judgment it is expedient or necessary, an attorney or attorneys, to advise him in his official capacity or to institute, conduct or appear in any civil or criminal cause in which the state is interested in any court, and to agree with such counsel on his compensation.   The salaries of the file clerk and stenographer, and messenger shall be paid as the salaries of other state officers are paid; the compensation of such counsel shall be paid in the amount and at the time agreed on, out of any general funds of the state, not otherwise appropriated on the auditor's warrant, drawn on the governor's certificate."

It is thus seen that by the amendment the Governor is empowered to employ a file clerk and stenographer and also an attorney or attorneys to advise him in his official capacity, as well as to institute, conduct, or appear in any civil or criminal case in which the state is interested, in any court, in addition to the one stenographer or messenger authorized by the original section.

The objection urged to this amendatory act, by counsel for appellee, is that it is violative of that provision of section 45 of the Constitution, which is as follows:

"Each law shall contain but one subject which shall be clearly expressed in its title."

That a section of the Code may be amended by reference to the section number only is well settled and clear, and not controverted by counsel.—*Montgomery v. State*, 107 Ala. 372, 18 South. 157; *Ensley v. Cohn*, 149 Ala. 316, 42 South. 827; *Comer v. Age-Herald*, 151 Ala. 613, 44 South. 673, 13 L. R. A. (. S.) 525.

Appellant, however, argues in brief one step further, and insists that such act, which in its title purports to amend a section of the Code, is sufficient for all purposes, and that the *matter* of the act need not be germane to the subject of the section so amended. In support of this we are cited to no authority. The argument, in our opinion, loses sight of the reasoning of the courts in holding such title sufficient.

As said in the case of *Ex parte Cowert*, 92 Ala. 99, 9 South. 226:

"The theory upon which this scant expression of the subject of the amendment is held to meet the constitutional requirements is that members of the General Assembly are supposed to know the provisions of the section to be amended, and that the subject to which those provisions relate is the subject also of the amendatory act."

We therefore think it clear that the matter of the amendatory act must be germane to, suggested by, and supplemental to the subject of the section sought to be amended.—*Ex parte Cowert, supra*, 92 Ala. 100, 9 South. 226.

Originally, the title of an act was held to be no part of it, but, under our Constitution, "the title is regarded as an essential part of the law, having a specific object and office—to control the subject of the enactment, and to restrict its provisions and details to such mattters as are pertinent and germane to the single object expressed in the title."—*Harper v. State*, 109 Ala. 28, 19 South. 857.

This provision of section 45 of the Constittuion is threadbare in discussion. Its objects are well expressed by Chief Justice BRICKELL in *Lindsay v. U. S. Savings & Loan Association*, 120 Ala. 156, 24 South. 171, 42 L. R. A. 783, and the following quotation from the opinion in that case will suffice for this occasion:

"The purposes of the constitutional requirement must be borne steadily in mind, when it becomes necessary to determine whether there has been legislative observance of it. The exposition of these purposes by Judge Cooley is accepted, we believe, in all the states in which a like limitation prevails. "They are: 'First, to prevent 'hodgepodge' or 'logrolling' legislation; second, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles give no intimation, and which might, therefore, be overruled, and carelessly and unintentionally adopted; and, third, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have the opportunity of being heard thereon, by petition or otherwise, if they shall so desire.—Cooley, Const. Lim., 172. No one of these purposes is of more or less importance than the other. The mischief of hodgepodge legislation, the inclusion in one act of matters or subjects 'of a very heterogeneous nature,' which may mislead and surprise the good faith of the lawmaking body, or logrolling legislation, intended to enlist varied and, it may be, hostile interests, in support of the proposed act, would have been avoided if the constitutional limitation had gone no further than the requisition that 'each law shall contain but one subject.' The unity of subject is an indispensable element of legislative acts; but it is not the only element; the subject must be 'clearly expressed in its title.' The purpose of this

requisition is, as expressed in the second proposition of the exposition of Judge Cooley, 'to prevent surprise or fraud upon the Legislature by means of provisions in a bill of which the title gives no intimation, and which might therefore be overlooked, and carelessly and unintentionally adopted.' The third proposition must be deemed, and by all authority is deemed, of equal importance—'to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they so desire.' When there is fair expression of the subject in the title, all matters reasonably connected with it, and all proper agencies or instrumentalities, or measures, which will or may facilitate its accomplishment are proper to be incorporated in the act, and, as usually said, are cognate or germane to the title. But, as was said in *Astor v. Railway Co.,* 113 N. Y. 110, 20 N. E. 598 [2 L. R. A. 789] : 'The title must be such, at least, as fairly to support or give a clew to the subject dealt with in the act, and, unless it comes up to this standard, it falls below the constitutional requirement.' "

It therefore appears, as is well understood, that the requirement that the subject of the act shall be clearly expressed in the title is not only for the prevention of fraud or surprise or deception upon the *Legislature* by means of provisions in the bill of which the title gives no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted, but is also for the further purpose "to fairly apprise the *people,* through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or other-

wise, if they so desire."—*Harper v. State,* 109 Ala. 28, 19 South. 857; *Ballentyne v. Wickersham,* 75 Ala. 533.

This last feature of the constitutional provision, without reference to any other, we conclude, is decisive of the case in hand, and is fatal to the validity of the act.

As previously stated, section 561 of the Code, amended by the act here under review, provided for the employment by the Governor of one stenographer or messenger to the chief executive office, whose compensation was fixed at $900 per annum. By other sections in this same article of the Code the Governor was authorized to employ certain services, as for instance, section 555, which provided for a private secretary to the Governor, and the following section, which provided for a recording secretary. And section 562 provided for the employment of additional clerks in any of the state departments in certain contingencies as therein shown. In the following section provision was made for the employment of four servants at the Capital; and in section 564 for the employment of four watchmen at the Capitol. Section 570 relates to the employment of *counsel* by the Governor under certain circumstances.

It therefore appears that each section of this article relating to the employment of any services deals with a *separate* and *distinct* subject. Section 561 concerns a messenger for the chief executive office. Its provisions, concisely expressed in the heading of the section as follows: "May employ messenger to executive office." It provided for purely ministerial or clerical work for the chief executive—that and nothing more. The employment of other services is provided for by separate sections, distinct and dissociated from this. The amendment by the act of April 11, 1911, provides for the employment of *counsel* by the Governor. It but remains for us to apply the principles of law above stated, by which we are to be guided, to the instant case.

The title of the bill to amend section 561 gave notice
to the Legislature and to the people that the subject of
that section was to constitute the subject of the act. Can
it be said consistently that the legislative mind, as well
as that of the people, being directed thereby to said sec-
tion, which provided merely for the employment of a
*stenographer* or *messenger* to the chief executive office,
would be *fairly apprised* that the amendatory act also
provided for employment of services of a professional
character, as of counsel, by the chief executive. We are
of the opinion that the question carries with it its own
negative answer. In this same article section 570 re-
lates to the employment of counsel by the Governor,
and, we may say, this section might with propriety have
been the subject of the amendment here sought to be up-
held, but we are forced to the conclusion that section
561 could not, under our constitutional requirements,
be the subject of such amendment as to provide for the
employment of counsel by the Governor. That section
has for its subject mere clerical aid to the Governor, a
matter, it might be said, of minor importance. It pro-
vided for no more, nor is there anything in this section
indicating otherwise.

It is argued, however, by counsel for appellant, that
the subject of this section may be said to be the *power*
of the *Governor* to *employ;* that it was an enabling stat-
ute, giving to the Governor the power of employing a
messenger; and that the act as amended simply extends
this same power of employment to other objects, namely,
"counsel or attorneys." In support of this contention
we are cited by counsel to the case of *Mobile & Girard
Railroad Co. v. Commissioners' Court of Pike County,*
97 Ala. 105, 11 South. 732, wherein the court had under
review section 23 of the act creating the criminal court
of Pike county, as it was amended by extending the ju-

risdiction of the court to the granting of writs of certio-
rari, mandamus, and supersedeas, and of all other rem-
edial writs which are granted by judges at common law.
It was held that section 23 related to the question of
*jurisdiction;* that the act amendatory of said section
also related to *jurisdiction* and extended the same; and
that, as the subject of the section was jurisdiction, the
title of the amendatory act, with reference to the num-
ber of the section only, carried a sufficient expression of
the subject to cover any provision relating to *jurisdic-
tion* of the court.   So it is here insisted the subject of
the original section was the "power of the Governor to
employ," and that therefore the amendment, which mere-
ly extends that power to employment of a filing clerk
and of counsel, relates to the sub-matter of the original
section.   The argument may be said to be ingenious, but
it is in our opinion, unsound.   It has not the supposed
premise upon which to rest.   The subject of section 561
cannot be stated as the "power of the Governor to em-
ploy."   It has reference to a messenger or stenogra-
pher, mere clerical help to the chief executive office.
Other services are provided for by other sections of the
Code.   It might with equal force and reason be argued
that the section providing for employment of watchmen
for the Capitol or other such services had, as subjects,
the same "power to employ."   If the argument should
be accepted, then such a section as that here under re-
view, providing merely for a stenographer or messen-
ger—entirely innocent of itself, and of somewhat minor
importance—could be extended so as to authorize not
only the employment of counsel, but the employment of
a vast number of services, both of professional charac-
ter and otherwise, involving the expenditure of vast
sums of money; and thus this section, involving orig-
inally the employment of mere clerical aid at a fixed sum

[State, ex rel. Troy v. Smith, Auditor.]

of $900 per annum, could be suddenly converted into one of the greatest importance and moment to the state. This would be the logical result of such insistence. To follow it in this case would in our opinion, do violence to reason and common sense, and render nugatory our constitutional requirement.

We are forced to conclude, therefore, that the amendment providing for employment of counsel is not germane and cognate to the subject of said section 561, nor complementary to any idea expressed therein, and that the title of the act giving notice of an amendment of such section gave no clew to the subject to be dealt with in the act. As previously quoted herein:

"The title must be such, at least, as fairly to support or give a clew to the subject dealt with in the act, and, unless it comes up to this standard, it falls below the constitutional requirement."

In the respect here insisted, therefore, the act comes under the condemnation of that provision of section 45 of our Constitution to which we have here written, and can consequently afford no support to appellant, the petitioner.

In reaching this conclusion, we have been mindful that, in approaching an investigation of the constitutionality of legislative acts, the court should constantly bear in mind the fundamental principle that every such enactment is presumably constitutional, and therefore, valid, and that he who assails it assumes the obligation to demonstrate beyond a reasonable doubt that it violates the fundamental law. As was said in the case of *Lovejoy v. City of Montgomery,* 180 Ala. 473, 61 South. 597:

"It is a solemn thing for a court to strike down a statute. A statute is, at least presumably, an expression by the people of their will through their representatives

selected by them for the purpose of making their laws."

We recognize therefore that it is the duty of the court to resolve all doubt and intendment in favor of their constitutionality.—*State, ex rel. Cullman v. Pitts,* 160 Ala. 133, 49 South. 441, 686, 135 Am. St. Rep. 79. Speaking on this subject, to the same effect, this court, in *City of Mobile v. Louisville & Nashville Railroad Co.,* 124 Ala. 141, 26 South. 905, said:

"While the provision of the Constitution under consideration is mandatory, still the courts should be certain that the statute is violative of the provision before proceeding to adjudge a solemn enactment of the law-making power of the state unconstitutional, but, when the subject is relieved of doubt, then there should be no hesitancy on the part of the judiciary to exercise the function and duty of declaring a given law unconstitutional, however, injurious may be the consequences to the individual litigant."

After resolving all doubt and intendment in favor of its constitutionality, we yet find our minds forced to a conviction, beyond all reasonable doubt, that this feature of the enactment is violative of our fundamental law, as previously stated, and it must therefore fall.

We are reminded in brief of counsel for appellant of the great importance of the decision in this case, for that many services have been performed by numerous counsel under employment as provided by this act, and under the assumption of its validity. With this, however, the court cannot be concerned. We may reach the conclusion with great reluctance, but it is the sole duty of the court to declare the law. We fully realize that it is a solemn thing to strike down a statute, but when we are so convinced, as in this case we are, beyond all reasonable doubt, then, as previously quoted, there should be "no hesitancy on the part of the judiciary

[State, ex rel. Troy v. Smith, Auditor.]

to exercise the function and duty of declaring a given law unconstitutional, however injurious may be the consequences to the individual litigant."

Many cases bearing upon the constitutional provision here discussed are noted in brief of counsel for appellee, as supporting the conclusion we have here reached. We have read each of them, but deem it unnecessary to comment upon them separately. We are of the opinion that a reading of them will disclose that in some instances the court found it necessary to declare the act unconstitutional upon even less persuasive reasons than are found in the instant case. We cite for convenience the following: *Ex parte James Gayle,* 108 Ala. 514, 19 South. 12; *State v. Davis,* 130 Ala. 148; *Ex parte Reynolds,* 87 Ala. 138, 6 South. 335; *Miller v. Jones,* 80 Ala. 89; *Montgomery v. State,* 88 Ala. 141, 7 South. 51; *Patton v. State,* 160 Ala. 111, 49 South. 809; *Sanders v. Commissioners of Elmore Co.,* 117 Ala. 543, 23 South. 788; *Louisville & Nashville Railroad Co. v. Grant,* 153 Ala. 112, 45 South. 226; *Black v. State,* 144 Ala. 92, 40 South. 611; *State v. Southern Railway Co.,* 115 Ala. 250, 22 South. 589; *State, ex rel. Birmingham v. Miller,* 158 Ala. 59, 48 South. 496; *Woolf v. Taylor,* 98 Ala. 254, 13 South. 688.

The judgment of the court below is in accord with the conclusion here reached, and must therefore be affirmed.

Affirmed. All the Justices concur, except DE GRAFFENRIED, J., not sitting.