## CITY OF ATLANTA *v.* ATLANTA JOURNAL COMPANY.

No. 12330. SEPTEMBER 23, 1938.

*J. C. Savage, C. S. Winn, Bond Almand,* and *J. C. Murphy,* for plaintiff in error.

*Arnold, Gambrell & Arnold,* contra.

HUTCHESON, Justice. The Atlanta Journal Company, duly licensed by the Federal Communications Commission to use and operate a radio station designated by the call letters WSB, instituted an action against the City of Atlanta, seeking to enjoin the city from issuing or seeking to issue and enforce any execution, one of which had actually issued and been levied upon the property of the plaintiff, for the collection of "the business license tax" pursuant to the following city ordinance: "Any person, firm, or corporation hereinafter referred to as a 'local broadcaster' who operates a place of business within the City of Atlanta, wherein such 'local broadcaster' maintains radio-broadcasting apparatus and facilities for sending messages over the ether waves, whereby for a consideration paid to the 'local broadcaster' time is sold,

leased, or contracted for, or the apparatus and facilities of the 'local broadcaster' are used by persons, firms, or corporations hereinafter referred to as 'local advertisers,' for the advertising of products, goods, wares, or merchandise, or for service of 'local advertisers' doing business in the City of Atlanta, to the general public residents of the City of Atlanta and the State of Georgia, shall be subject to an annual business license tax, for carrying on the business of broadcasting local advertisement to prospective customer resident in Atlanta or Georgia, the sum of $300, payable in quarterly installments beginning at the third quarter of 1937. Provided, however, the foregoing shall not be construed as to include the imposition of a business license on any radio-broadcasting station that leases or sells its entire time or uses its apparatus or facilities altogether for the broadcasting of programs or advertising matter brought to Atlanta by wire or wireless and rebroadcasting from Atlanta, or broadcasting advertisement intended entirely for the benefit of persons non-residents of Atlanta and State of Georgia." This ordinance was adopted on July 6, 1937, approved on the following day, and repealed the then existing license tax on "radio-broadcasting station $300." It is alleged in the petition that the plaintiff is engaged in interstate commerce; that the broadcasting of messages is not divisible into intrastate and interstate communications; and that if the ordinance in question be held to apply to the plaintiff, it imposes a burden upon interstate commerce, contrary to art. 1, sec. 8, par. 3, of the constitution of the United States. The following appeared from the agreed statement of facts on which the case was submitted to the court without a jury:

"The offices and broadcasting rooms of said station [WSB] are located in the Atlanta Biltmore Hotel in the City of Atlanta, wherein the business of the radio station is transacted; contracts for sale or lease of time of the station are entered into; also there is located in these offices rooms in which programs are received which come to Atlanta by telephone over network programs, as well as rooms for programs which originate in Atlanta; also the radio equipment such as transmitters, microphones, etc., necessary to relay or transmit programs over the ether waves. . . The radio station is operated continually every day from 5:45 a. m. to 12 o'clock midnight. . . The average number

of hours the station broadcasts programs originating outside of Georgia and brought to Atlanta by wire and then rebroadcast, and for which the station is paid for time sold, is approximately four hours and twenty-nine minutes per day; the average number of hours which the station devotes to broadcasting or rebroadcasting programs of a public nature, such as governmental or educational, is about seven hours per day; the average number of hours devoted by the station to broadcasting programs or "spot" advertisements, which originate in its Atlanta studio and for which it receives compensation, is approximately two hours per day. The greater part of these two-hour periods refers to programs recorded out of Georgia on records and sent to Atlanta for broadcasting. In that sense only do they originate in the Atlanta studio. . . *The station sells time to persons, firms, and corporations carrying on business in Atlanta. The station for a stated and agreed charge sells time over its station for periods varying from one minute to thirty minutes or longer; the amount of the charge being dependent upon the length and time of day the station is used.* . . One type of advertising that is used by the local merchants is known as 'spot announcements,' which means that the radio announcer in the interval between regular programs, makes a short announcement which advertises some person's business or product sold by him. . . During the year 1937 merchants and dealers having their place of business in Atlanta have, for compensation paid to the station, broadcasted advertisements over station WSB in the sale of clothing, coal, automobiles, automobile accessories, household goods, soft drinks, beer, jewelry, gasoline, and oils. That said merchants and dealers were those who sold at retail or wholesale, either or both. That during political campaigns the facilities of said radio station are leased to candidates for political offices, and speeches are made in behalf of their campaign. In 1936 candidates for state, county and city offices used said station for such purposes, and in 1937 candidates at a special election for county commissioner in Fulton County used said station for such purposes, for which the station received revenues.

"That the Atlanta Journal uses said station six times daily for fifteen-minute intervals to broadcast news items and features appearing in the Atlanta Journal. The Atlanta Journal circulates

and is subscribed for in each State surrounding Georgia and in many other States and foreign nations, and these programs are intended to reach, and do reach, not only the people of Georgia, but the people of other states of the United States and people of foreign nations. That the station is part of the network of the National Broadcasting Company, by virtue of a contract between the National Broadcasting Company and the Atlanta Journal, by which the Atlanta Journal broadcasts certain programs of the National Broadcasting Company. . . That the plaintiff's business furnishes a valuable advertising medium to many forms of industry and business upon an international, national, and regional scale, and has served the listening public in said territories with many educational and entertaining features. That the plaintiff's station is one of the most powerful in the southeastern states, and is one of the largest stations of the country, and is known as a 50,000-watt station, and operates on a frequency of 740 kilocycles. That all messages which emanate from said station pass the boundary lines of Georgia and into the surrounding states and the territory beyond, and this applies to all messages whether from local advertisers or from any one else. Every message which is sent out is received in states other than Georgia, and listeners in other states other than Georgia comprise a large portion of the plaintiff's audience, whether the programs originate in Atlanta or Fulton County or Georgia or elsewhere. That all messages sent out by plaintiff over its broadcasting apparatus travel the ether waves outside the State of Georgia, and are received in other states by what are known as receiving sets which convey the messages to listeners in other states, and said broadcasting is accomplished by the generation at the broadcasting station of electro-magnetic waves which pass through space to receiving instruments in Georgia and in other states and nations, which amplify and translate them into audible sound waves, and the essential elements in the broadcasting operation are the supply of electrical energy, the transmitter, the connecting medium or ether between the transmission and receiving instruments and the receiving mechanism. The entire process is one complete, united, and dependent whole, and the combination of the electrical energy, the transmitter and the connecting medium, or ether, all enter into and make up an interstate communication which is trans-

lated into a message by the receiving mechanism. *All the revenue obtained by plaintiff from the use of its station is acquired through its ability to broadcast the type of programs and messages which its facilities are fitted for, to wit, messages that will be heard by a large number of people both within and without the State of Georgia and in other states in the union,* and it is impossible to restrict its messages to people solely within the State of Georgia; and it can not, under the mechanism controlled and operated by it, limit the reception of its programs to persons within the State of Georgia."

While the above does not constitute all the agreed statement of facts, it is sufficient for the determination of the case before the court. The trial court ruled the ordinance unconstitutional, and enjoined enforcement against the plaintiff of the execution and the ordinance. The defendant excepted. As we construe the ordinance it requires the payment of a license tax by a radio-broadcasting station, which, either for part or all of its broadcasting time, contracts for the use of its facilities for a consideration with a local advertiser for broadcasting of advertising matter solely to, or intended solely to, prospective customers resident in Atlanta and the State of Georgia, and places such tax "on the business of broadcasting" such programs. Under the evidence it is not shown that the plaintiff is so engaged. The evidence authorizes, if it does not demand, a finding to the contrary. It is agreed as true that the plaintiff receives all of its revenue by reason of its ability to broadcast to recipients or prospective customers, both within and without the State. The evidence authorized the finding that the plaintiff was not carrying on the business defined in the taxing ordinance. For this reason the court did not err in granting the injunction, and it was not necessary to pass on the constitutionality of the ordinance. The judgment is affirmed, with direction that the decree be so modified as not to preclude either party upon any question as to the constitutionality of the ordinance, or the future applicability of the ordinance to the plaintiff in the event the plaintiff should by its manner of doing business bring itself within the terms of the ordinance.

*Judgment affirmed, with direction. All the Justices concur, except Atkinson, P. J., who dissents.*