51 So.2d 360

**DORSKY v. BROWN, License Inspector.**

6 Div. 967.

Supreme Court of Alabama.

March 1, 1951.

J. Paul Meeks, of Birmingham, for appellant.

240

A. A. Carmichael, Atty. Gen., and Wm. H. Burton, Jr., Asst. Atty. Gen., for appellee.

PER CURIAM.

The dissenting opinion of Mr. Chief Justice LIVINGSTON sufficiently states the facts and the point of law involved.

It is contended that Act No. 688, General Acts 1947, page 522, is unconstitutional under the last sentence of section 70 of the 1901 Constitution of Alabama, which provides that "No revenue bill shall be passed during the last five days of the session", and that Act No. 688 was passed on the last day of the 1947 regular session of the legislature. The contention is without merit.

The title of Act No. 688 is as follows: "An Act To amend Section 613, Title 51, Code of Alabama 1940, as amended by an Act entitled An Act to amend Section 613, Title 51, Code of Alabama 1940, Act No. 207, General Acts Regular

Session 1943, approved June 22, 1943, page 185." The argument seems to be that section 613, supra, had for its origin schedule 154 of section 348, Article XIII, Chapter 1, of the General Revenue Bill passed by the Legislature of 1935, General Acts 1935, pages 256–504. Schedule 154 was amended by an Act of the Legislature of 1937, General and Local Acts, Extra Session, 1937, pages 32–33. It was amended again by the Legislature of 1939, General Acts 1939, Regular and Special Session, page 519. Schedule 154 was then brought into the Code of 1940, as section 613, Title 51, Section 613, supra, was amended by an Act of the Legislature of 1943, General Acts 1943, page 185, and as amended was again amended by Act No. 688, supra, of the Legislature of 1947, General Acts 1947, page 522.

█ It is unnecessary to speculate as to the effect of bringing schedule 154, supra, as amended by the several amendments pointed out into the Code of 1940, as section 613, Title 51, for the reason that Act No. 688, House Bill No. 235 is a bill "for raising revenue," which under the provisions of section 70 of the Constitution properly originated in the House, but is not a "revenue bill" within the inhibition of the last clause of section 70 of the Constitution, that "No revenue bill shall be passed during the last five days of the session."

█ Our cases are clear to the effect that the last clause of section 70, supra, refers to and was intended by the Constitution makers to apply only to the general revenue bill. Woco Pep Co. of Montgomery v. Butler, 225 Ala. 256, 142 So. 509; Harris v. State ex rel. Williams, 228 Ala. 100, 151 So. 858; In re Opinion of Justices, 223 Ala. 369, 136 So. 589; In re Opinions of Justices, 233 Ala. 463, 172 So. 661.

█ It is also insisted that Act No. 688 is violative of that part of section 45 of the 1901 Constitution of Alabama, which provides that "Each law shall contain but one subject, which shall be clearly expressed in its title". That a section of the Code may be amended by reference to the section number only is well settled by our decisions. Of course, it is understood that the amendatory act must be germane to, supported by and supplemental to the section of the act sought to be amended. State ex rel. Troy v. Smith, Auditor, 187 Ala. 411, 65 So. 942; Glass v. Prudential Ins. Co., 246 Ala. 579, 22 So.2d 13; Harris v. State ex rel. Williams, 228 Ala. 100, 151 So. 858; City of Birmingham v. Merchants Cigar & Candy Co., 235 Ala. 204, 178 So. 220.

The title of Act No. 688 is as follows: "To amend Section 613, Title 51, Code of Alabama 1940, as amended by an Act entitled an Act to amend Section 613, Title 51, Code of Alabama 1940, Act No. 207, General Acts Regular Session 1943, approved June 22, 1943, page 185."

Act No. 688 is a complete rewrite to section 613, supra, as amended by Act No. 207, passed by the 1943 Legislature. Coin operated radios were not taxed under section 613, supra. Other machines and devices taxed under the provisions of Act No. 688 were not included in section 613, supra.

█ █ The subject of a section of the Code is the idea or thing about which the legislature has expressed its will. Kendrick v. State, 218 Ala. 277, 120 So. 142, and our cases are to the effect that the title of an act which purports merely to amend a certain section of the Code cannot, conformably with section 45 of the Constitution, add a new and different subject. Kendrick v. State, supra; State ex rel. Troy v. Smith, Auditor, supra; Board of Revenue v. Jansen, 224 Ala. 240, 139 So. 358.

█ The subject of Act No. 688, supra, is machines or devices in the nature of coin in the slot or vending machines, which are also the subject of section 613, supra.

Act No. 688, supra, does not offend section 45 of the Constitution in respect to that feature of it now under consideration.

█ Appellant argues that a coin operated radio receiving set is not a "vending machine" and, as a consequence, Act

No. 688, supra, presented a new subject matter not covered by section 613, supra. We think the foregoing argument is answered above. The Court is of the opinion that the taxable event here under consideration is controlled by the same principles of law as announced and followed by this Court in Sanford v. City of Clanton, 31 Ala.App. 253, 15 So.2d 303, certiorari denied 244 Ala. 671, 15 So.2d 309; and we are not convinced that later cases of the Supreme Court of the United States have detracted from the pertinent principles enunciated in that case, which is the prevailing rule on the question in this jurisdiction. Therefore, until there is a clearer pronouncement by the United States Supreme Court on the subject, we prefer to rest on the rule of the Sanford case as controlling.

We are not convinced beyond reasonable doubt that the statute is unconstitutional, and, therefore, affirm the decree of the lower court in so holding.

BROWN, FOSTER, LAWSON, SIMPSON, and STAKELY, JJ., concur.

LIVINGSTON, C. J., dissents as indicated.

LIVINGSTON, Chief Justice, dissenting.

The appellant, M. Dorsky, instituted this proceeding in the Circuit Court, in Equity, of Jefferson County, Alabama, against Bradley G. Brown, as License Inspector of Jefferson County, Alabama, the appellee, seeking a declaratory judgment as to the constitutional validity of the tax imposed on each coin operated radio by Act 688 of General Acts of the Regular Session of the 1947 Legislature of Alabama, General Acts 1947, page 522; Title 51, section 613, Pocket Part, Code of 1940. The petition or bill of complaint also sought an injunction restraining Brown from collecting the tax provided for in section 613, supra.

The cause was submitted on the bill of complaint as amended and an agreed statement of facts. The court entered a decree denying generally the relief prayed for, and from that decree this appeal is prosecuted. We take it that the decree sustains the validity of the Act assailed and will so treat it.

Several grounds are assigned raising the question of the constitutionality of section 613, supra. Some of these grounds are without merit. But in our opinion that part of section 613, supra, which attempts to levy a license tax on "each coin-operated radio," is violative of the commerce clause of the Constitution of the United States.

It is agreed that the coin operated radios, here involved, have been installed in guest rooms of the Molton, Bankhead and Thomas Jefferson Hotels in the City of Birmingham, Alabama. They are owned, installed and serviced by appellant, Dorsky. By contract, Dorsky received seventy-five per cent of the receipts from the machines and the hotels twenty-five per cent. It is further stipulated that: "The coin radio when in use is plugged into the wall socket in the same manner as a floor lamp or other movable electrical device, and is operated by a person inserting a coin in the coin slot situated on the top left hand side of the cabinet, and at the same time by pressing down on the button or small push lever which is situated in close proximity to the coin slot and on the same side of the cabinet as is shown by the figures designated as 'T-230' and 'T-231' of exhibit 'A' hereto. This operation turns on the electric current in the cabinet as shown by Exhibit 'B' hereto; but does not turn on the radio itself, which requires a separate operation, or turning on the control switch of the radio as is shown by 'L-104' of Exhibit 'A' hereto. After the electric current is turned on by the insertion of the coin, and the control switch of the radio is also turned on, the radio operates in the similar manner as other radios, except for the fact that it only operates for approximately a period of two hours or until the current is automatically switched off by the time unit which is situated on the coin device as is shown in Exhibit 'B' hereto. After such period of time, and if the radio is to be played again,

it is necessary to insert another coin in the coin device and to go through the same operations as have been heretofore describ-. ed."

That communications by radio constitute interstate commerce is of course not open to question. Gibbons v. Ogden, 9 Wheat 1, 6 L.Ed. 23; Fisher's Blend Station, Inc., v. Tax Comm., 297 U.S. 650, 56 S.Ct. 608, 610, 80 L.Ed. 956. But whether radio broadcasting involves intrastate activity which may be subjected to local taxation, the decided cases are not in harmony. In the Fisher's Blend Station case, supra, the United States Supreme Court seems to have reserved this point by the following language: "Whether the state could tax the generation of such energy, or other local activity of appellant, as distinguished from the gross income derived from its business, it is unnecessary to decide." In that connection see the following cases: United States v. American Bond & Mortgage Co., D.C., 31 F.2d 448; City of Atlanta v. Atlanta Journal Co., 186 Ga. 734, 198 S.E. 788; Whitehurst v. Grimes, D.C., 21 F.2d 787; Albuquerque Broadcasting Co. v. Bureau of Revenue, 51 N.M. 332, 184 P.2d 416, 11 A.L.R.2d 966; Beard v. Vinsonhaler, 215 Ark. 389, 221 S.W.2d 3.

The tax here involved is levied on the business of operating instrumentalities of reception rather than the business of broadcasting. No attempt is made in section 613, supra, to apportion the tax or to separate intrastate communications from interstate communications and to levy the tax on intrastate communications only. So in that respect, we are bound to consider the levy as one on interstate communications, or on the business of operating instrumentalities used in interstate communications.

As we understand the Fisher's Blend case, supra, it was not held that all broadcasting was interstate commerce, but that as the tax was levied on the gross income, which included that from interstate commerce, it followed that it was an unauthorized tax levied on interstate commerce.

We have found only one case determining a state's right to levy a tax upon radio receiving sets. In that case, reported in D.

C., 46 F.2d 671, and styled Station WBT v. Poulnot, it was held that radio receiving sets in South Carolina were absolutely essential instrumentalities of interstate commerce, and that the state of South Carolina had no right to lay an annual license tax on the privilege of owning and operating a radio receiving set in that state. The opinion in that case was rendered January 7, 1931. It was cited with apparent approval in the case of Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 551, 82 L.Ed. 823, 115 A.L.R. 944, decided by the United States Supreme Court on February 28, 1938.

Some general observations made in the Western Live Stock case, supra, regarding the power of the state to tax interstate commerce have caused much comment, and have so divided the Supreme Court of the United States that subsequent decisions on the subject lack unanimity. For a rather full discussion, see Albuquerque Broadcasting Co. v. Bureau of Revenue, supra. In the Western Live Stock case, supra, the United States Supreme Court said: "In this and other ways the case differs from Fisher's Blend Station, Inc., v. State Tax Comm'n., supra, on which appellants rely. There the exaction was a privilege tax laid upon the occupation of broadcasting, which the Court held was itself interstate communication comparable to that carried on by the telegraph and the telephone, and was measured by the gross receipts derived from that commerce. If broadcasting could be taxed, so also could reception. Station WBT, Inc. v. Poulnot, D.C., 46 F.2d 671: In that event a cumulative tax burden would be imposed on interstate communication such as might ensue if gross receipts from interstate transportation could be taxed. This was the vice of the tax of a percentage of the gross receipts from goods sold by a wholesaler in interstate commerce, held invalid in Crew Levick Co. v. Pennsylvania, supra (245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295). In form and in substance the tax was thought not to be one for the privilege of doing a local business separable from interstate commerce. Cf. American Manufacturing Co. v. [City of] St. Louis, supra (250 U.S. 459, 39 S.Ct. 522,

63 L.Ed. 1084). In none of these respects is the present tax objectionable."

The holding in the Poulnot case, supra, was that a radio broadcasting station had the right to attack the constitutionality of a state law imposing a tax on radio receiving sets because the result of such a tax was to impair the value of the business of broadcasting stations, and if the amount of the tax should be increased, the business might be destroyed entirely, so that the property rights of the broadcasting station were directly affected by the tax in question. If the reception of interstate radio communications can be taxed in Alabama, the same communications received in other states may be taxed there also. We think that is the cumulative tax burden regarding radio communications envisioned by Mr. Justice Stone in the above quoted excerpt from his opinion in the Western Live Stock case, supra.

In the case of McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 400, 84 L.Ed. 565, 128 A.L.R. 876, Mr. Chief Justice Hughes in a dissenting opinion concurred in by Mr. Justice McReynolds and Mr. Justice Roberts said:

"We have sustained the authority of the State to impose occupation taxes when they were deemed to be so measured or apportioned as to relate appropriately to the privilege of transacting an intrastate business. The application of these principles has led to close distinctions. But that fact would seem to present no good reason for sweeping away the protection of interstate commerce where the State lays a direct tax upon that commerce as in this case.

"We have said in a long line of decisions, that the State cannot tax interstate commerce either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the receipts, as such, derived from it. The same principle has been declared in recent cases. In Fisher's Blend Station v. Tax Commission, 297 U.S. 650, 655, 56 S.Ct. 608, 610, 80 L.Ed. 956, [959], we said: 'As appellant's income is derived from interstate commerce, the tax, measured by appellant's gross income, is of a type which

has long been held to be an unconstitutional burden on interstate commerce'. There, a state occupation tax upon the gross receipts of the owner of a radio station from broadcasting programs to listeners within and beyond the State was held invalid."

See, also, Minnesota rate cases, Simpson v. Shepard, 230 U.S. 352, 400, 57 L.Ed. 1511, 1541, 33 S.Ct. 729, 48 L.R.A., N.S., 1151, Ann.Cas.1916A, 18; State Freight Tax case, 15 Wall. 232, 21 L.Ed. 146; Robbins v. Taxing Dist., 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694, 1 Interst.Com.R. 45; Philadelphia & S. Mail S. S. Co. v. Pennsylvania, 122 U.S. 326, 7 S.Ct. 1118, 30 L. Ed. 1200, 1 Interst.Com.R. 308; Leloup v. Mobile, 127 U.S. 640, 8 S.Ct. 1380, 32 L.Ed. 311, 2 Interst.Com.R. 134; McCall v. California, 136 U.S. 104, 10 S.Ct. 881, 34 L.Ed. 391, 3 Interst.Com.R. 181; Brennan v. City of Titusville, 153 U.S. 289, 14 S.Ct. 829, 38 L.Ed. 719, 4 Interst.Com.R. 658; Galveston, H. & S. A. R. Co. v. Texas, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031; Western Union Tel. Co. v. State of Kansas ex rel. Attorney General, 216 U.S. 1, 30 S.Ct. 190, 54 L.Ed. 355; Pullman Co. v. Kansas, 216 U. S. 56, 30 S.Ct. 232, 54 L.Ed. 378; Meyer v. Wells Fargo & Co., 223 U.S. 298, 32 S.Ct. 218, 56 L.Ed. 445; Crenshaw v. Arkansas, 227 U.S. 389, 33 S.Ct. 294, 57 L.Ed. 565; Crew Levick Co. v. Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295; Sonneborn Bros. v. Cureton (Sonneborn Bros. v. Keeling), 262 U.S. 506, 515, 43 S.Ct. 643, 67 L.Ed. 1095, 1100; Fisher's Blend Station, Inc., v. Tax Commission, 297 U.S. 650, 655, 56 S.Ct. 608, 80 L.Ed. 956, 959; Puget Sound Stevedoring Co. v. Tax Commission, 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68; J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 311, 58 S.Ct. 913, 82 L.Ed. 1365, 1369, 117 A.L.R. 429; Gwin, White & Prince v. Henneford, 305 U.S. 434, 439, 59 S.Ct. 325, 83 L.Ed. 272, 276.

The foregoing principles enunciated by Mr. Chief Justice Hughes might have been somewhat impaired by the majority opinion in that case and the case of Western Live Stock v. Bureau of Revenue, supra, and other cases; but, if so, it was apparently resuscitated in Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 276, 91 L.Ed. 265, and

restored to its former standing as a bar to state taxation. In that case it was said:

"Our starting point is clear. In two recent cases we applied the principle that the Commerce Clause was not merely an authorization to Congress to enact laws for the protection and encouragement of commerce among the States, but by its own force created an area of trade free from interference by the States. In short, the Commerce Clause even without implementing legislation by Congress is a limitation upon the power of the States. (Citation.) In so deciding we reaffirmed, upon fullest consideration, the course of adjudication unbroken through the Nation's history. * * *

"State taxation falling on interstate commerce, on the other hand, can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys. But revenue serves as well no matter what its source. To deny to a State a particular source of income because it taxes the very process of interstate commerce does not impose a crippling limitation on a State's ability to carry on its local function. Moreover, the burden on interstate commerce involved in a direct tax upon it is inherently greater. certainly less uncertain in its consequences, than results from the usual police regulations. * * *

"It cannot justify what amounts to a levy upon the very process of commerce across State lines by pointing to a similar hobble on its local trade. * * *

"To extract a fair tithe from interstate commerce for the local protection afforded to it a seller State need not impose the kind of tax which Indiana here levied. As a practical matter, it can make such commerce pay its way, as the phrase runs, apart from taxing the very sale. * * *"

There follow many illustrations of indirect taxes on interstate commerce, which may be constitutionally levied by the states; then follows:

"These illustrative instances show that a seller State has various means of obtaining legitimate contribution to the cost of its government, without imposing a direct tax on interstate sales. While these permitted taxes may in an ultimate sense, come out of interstate commerce, they are not, as would be a tax on gross receipts, a direct imposition on that very freedom of commercial flow which for more than a hundred and fifty years has been the ward of the Commerce Clause. * * *

"Nor is there any warrant in the constitutional principles heretofore applied by this Court to support the notion that a State may be allowed one single tax-worth of direct interference with the free flow of commerce. An exaction by a State from interstate commerce falls not because of a proven increase in the cost of the product. What makes the tax invalid is the fact that there is interference by a State with the freedom of interstate commerce. * * *

"Taxes which have the same effect as consumption taxes are properly differentiated from a direct imposition on interstate commerce, such as was before the Court in the Adams case (J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429) and is now before us. The tax on the sale itself cannot be differentiated from a direct unapportioned tax on gross receipts which has been definitely held beyond the State taxing power ever since Fargo v. Michigan, 121 U.S. 230, 7 S.Ct. 857, 30 L.Ed. 888".

The court reaffirmed "upon fullest consideration, the course of adjudication unbroken through the Nation's history * * *", supra, that is, the dogma that interstate commerce cannot be taxed directly. See, also, Joseph, Comptroller v. Carter & Weekes Stevedoring Co., 330 U.S. 422, 67 S.Ct. 815, 819, 91 L.Ed. 993.

As I understand the decisions of the Supreme Court of the United States, they of course being controlling, the attempt by the State of Alabama to impose an occupation tax on coin operated radios is abortive, and section 613, supra, to that extent is unconstitutional and void.

The majority of the Court entertain the view the statute is constitutional and that the decree of the lower court should be affirmed.

I therefore dissent.